905 P.2d 633

STATE of Idaho, Plaintiff–Respondent,

v.

Juan TALAVERA, Defendant–Appellant.

Docket No. 22033.

Supreme Court of Idaho.
Idaho Falls, September, 1995 Term.

Nov. 3, 1995.

Rehearing Denied Nov. 28, 1995.

Robert J. Crowley, Jr., Rigby, for appellant.

Alan G. Lance, Attorney General, Michael Henderson, Deputy Attorney General, Boise, for respondent. Michael A. Henderson argued.

SCHROEDER, Justice.

This is an appeal from a district court order denying appellant Juan Talavera's (Talavera) motion to dismiss a felony charge of driving under the influence as impermissible under the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution,[1] Article I, Section 13 of the Idaho Constitution,[2] and section 18–301 of the Idaho Code (repealed, 1995).[3]

1. **Criminal actions—Provisions concerning—Due process of law and just compensation clauses.—** No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

2. **§ 13. Guaranties in criminal actions and due process of law.—**

. . . .

No person shall be twice put in jeopardy for the same offense; nor be compelled in any criminal case to be a witness against himself; nor be deprived of life, liberty or property without due process of law.

3. **18–301. Acts punishable in different ways—Double jeopardy.—**An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

On September 4, 1994, a Rigby police officer stopped Talavera for driving in the wrong lane of traffic. The officer reportedly noticed the odor of alcohol on Talavera's breath and administered field sobriety tests. A records check revealed two prior driving under the influence (DUI) convictions within the previous five years. Talavera was arrested pursuant to section 18–8004(1)(a) of the Idaho Code [4] for driving under the influence and was also cited for driving without privileges (second offense) pursuant to section 18–8001 of the Idaho Code.

Following his arrest, Talavera took an Intoxilyzer 5000 test which resulted in readings indicating a blood alcohol concentration (BAC) of .20 percent. Based on this test, Talavera received an administrative license suspension notice which became effective on or about October 10, 1994, as a 90–day suspension pursuant to section 18–8002A of the Idaho Code (enforcement stayed, 1995).[5] At that time Talavera's license was already suspended for a term that extended beyond the 90–day suspension.[6]

Following a preliminary hearing on the felony DUI charge, Talavera was bound over to district court for trial, and the misdemeanor Driving Without Privileges charge was

---

punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other.

4. **18–8004. Persons under the influence of alcohol, drugs or any other intoxicating substances.**—(1)(a) It is unlawful for any person who is under the influence of alcohol, drugs or any other intoxicating substances, or who has an alcohol concentration of 0.10, as defined in subsection (4) of this section, or more, as shown by analysis of his blood, urine, or breath, to drive or be in actual physical control of a motor vehicle within this state, whether upon a highway, street or bridge, or upon public or private property open to the public.

5. **18–8002A. Tests of driver for alcohol concentration, presence of drugs or other intoxicating substances—Suspension upon failure of tests.**—

. . . .

(2) Suspension.

(a) Upon receipt of the sworn statement of a peace officer that there existed legal cause to believe a person had been driving or was in actual physical control of a motor vehicle while under the influence of alcohol, drugs or other intoxicating substances and that the person submitted to a test and the test results indicated an alcohol concentration or the presence of drugs or other intoxicating substances in violation of section 18–8004, Idaho Code, the department shall suspend the person's license or permit to drive:

(i) For a period of ninety (90) days from a first failure of evidentiary testing under the provisions of this section. The first thirty (30) days of the suspension shall be absolute and the person shall have absolutely no driving privileges of any kind. Restricted driving privileges applicable during the remaining sixty (60) days of the suspension may be requested as provided in subsection (8) of this section.

(ii) For a period of one (1) year for a second and any subsequent failure of evidentiary testing under the provisions of this section within

the immediately preceding five (5) years. No driving privileges of any kind shall be granted during the suspension imposed pursuant to this subsection.

The person may request an administrative hearing on the suspension as provided in subsection (6) of this section. Any right to contest the suspension shall be waived if a hearing is not requested as therein provided.

(b) The suspension shall become effective thirty (30) days after service upon the person of the notice of suspension. The notice shall be in a form provided by the department and shall state:

(i) The reason and statutory grounds for the suspension;

(ii) The effective date of the suspension;

(iii) The suspension periods to which the person may be subject as provided in subsection (2)(a) of this section;

(iv) The procedures for obtaining restricted driving privileges;

(v) The rights of the person to request an administrative hearing on the suspension and that if an administrative hearing is not requested within seven (7) days of service of the notice of suspension the right to contest the suspension shall be waived;

(vi) The procedures for obtaining an administrative hearing on the suspension;

(vii) The right to judicial review of the hearing officer's decision on the suspension and the procedures for seeking such review.

6. Talavera's license was suspended for 12 months as the result of a previous DUI conviction under section 18–8004 of the Idaho Code. This suspension was not an administrative license suspension pursuant to section 18–8002A. Although it is unclear from the record, it appears the suspension was pursuant to section 18–8005(2)(e) which provides for a mandatory license suspension of six months after release from confinement, up to a maximum suspension of one year, for subsequent violation of section 18–8004 within five years.

consolidated with the DUI charge. Talavera filed a motion to dismiss in the district court on the grounds that the prosecution for DUI in addition to the suspension of his driver's license violated his rights against double jeopardy as guaranteed by the Fifth Amendment of the United States Constitution and Article 1, Section 13 of the Idaho Constitution. He also asserted that the prosecution violated the provisions of section 18–301 of the Idaho Code. The district court denied the motion. Talavera then filed a motion pursuant to Idaho Appellate Rule 12 for permission to appeal the district court's interlocutory order denying his motion to dismiss. That motion was granted, and this Court agreed to an expedited review of the appeal.

## II.

## THE PRIOR SUSPENSION DOES NOT PRECLUDE THE COURT FROM DECIDING THE ISSUE OF DOUBLE JEOPARDY

■ A threshold question is whether the Court should reach the question of double jeopardy in view of the fact that Talavera was already under suspension at the time of the administrative law suspension in this case. Arguably the suspension at issue in this case is of no consequence, since the prior suspension extended beyond the duration of the suspension at issue. There are several bases upon which this Court determines that there is an actual controversy, and that it is appropriate to decide the issues: (1) the suspension in this case is a predicate for a longer suspension in the future, and (2) the issues raised by Talavera have been raised in numerous cases which· have been stayed pending the outcome of this case. These issues are of significant public concern, and it is inevitable that this Court will decide them. See Ellibee v. Ellibee, 121 Idaho 501, 503, 826

P.2d 462, 464 (1992) (Where issues of substantial public interest are presented, an appeal may be heard although the issue may be technically moot provided the controversy at the heart of the appeal remains alive.); Miles v. Idaho Power Co., 116 Idaho 635, 643, 778 P.2d 757, 765 (1989) ("Where it is clear that this issue will be before us either now or in the future, and a declaration now of the various rights of the parties will certainly afford a relief from uncertainty and controversy in the future, the issue presented is ripe for review.").

The suspension in this case was for a period of ninety (90) days pursuant to Idaho Code Section 18–8002A(3)(b)[7]. A second and any subsequent failure of evidentiary testing will result in suspension for a period of one (1) year. I.C. § 18–8002A(3)(b). Consequently the suspension in this case has changed Talavera's legal status sufficiently to permit him to challenge the validity of also charging him with DUI.

The issues of double jeopardy and the application of Idaho Code section 18–301 argued by Talavera have been asserted in numerous cases presently before this Court. Proceedings in these cases have been stayed pending the outcome of this case.[8] Talavera asserts issues of significant public concern which this Court must address now or later. It is preferable to address them now.

## III.

## CRIMINAL PROSECUTION OF THE DEFENDANT FOR DRIVING UNDER THE INFLUENCE IS NOT BARRED BY THE DOCTRINE OF DOUBLE JEOPARDY AS GUARANTEED BY THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION

■ Talavera asserted both the Fifth Amendment of the United States Constitu-

---

7. **18–8002A. Tests of driver for alcohol concentration, presence of drugs or other intoxicating substances—Suspension upon failure of tests.—**
. . . .
(3)(b) Effective not later than thirty (30) days after service upon him of the notice of suspension his license shall be suspended for ninety (90) days, the first thirty (30) days of which shall be absolute, for a first failure of evidentiary testing under the provisions of this section; or for a period of one (1) year, all of which shall be

absolute, for a second and any subsequent failure of evidentiary testing under the provisions of this section within the immediately preceding five (5) years;

8. See for example: State v. Masuda No. 22305, State v. Siguenza No. 22311, State v. Vangelder No. 22312, State v. Raff No. 22313, State v. Wilson No. 22314, State v. Farrell No. 22315, State v. Arp No. 22316, and State v. Zuniga No. 22317.

tion and Article I, Section 13 of the Idaho Constitution in his claim that the prosecution for driving under the influence is barred as double jeopardy in view of the administrative suspension of his license. He does not assert any greater protection under the Idaho Constitution than under the United States Constitution, and the district court determined this issue under the United States Constitution. Therefore, this Court will analyze the protections afforded by the Fifth Amendment of the United States Constitution.

The Double Jeopardy Clause protects against three abuses: "a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *See, e.g., North Carolina v. Pearce,* 395 U.S. 711, 717 [89 S.Ct. 2072, 2076, 23 L.Ed.2d 656] (1969)." *U.S. v. Halper,* 490 U.S. 435, 441, 109 S.Ct. 1892, 1898, 104 L.Ed.2d 487 (1989). It is the third of these protections at issue in this case. That is, does the administrative license suspension constitute punishment within the meaning of the Double Jeopardy Clause so as to foreclose subsequent punishment for the DUI arising out of the same incident?

Talavera argues that the presence of any deterrent element in a given penalty renders it "punishment" for double jeopardy purposes. The State maintains that it is a question of degree: a penalty can only be characterized as "punishment" to the extent it exceeds its remedial purpose. The issue arises as a result of a series of United States Supreme Court decisions: *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989); *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993); and *Department of Revenue of Montana v. Kurth Ranch (Kurth Ranch),* — U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994).

In *Halper* the manager of a medical services business was convicted of submitting 65 false claims for Medicare benefits reimbursement. He was sentenced to prison and fined $5,000 under the federal false-claims criminal statute. 490 U.S. at 437, 109 S.Ct. at 1896. The district court then granted the government summary judgment against Halper un-der the federal civil false claims act, based solely on the facts established in Halper's criminal trial. *Id.* at 438, 109 S.Ct. at 1896. Under the terms of the civil statute, Halper was liable for a civil penalty of $2,000 per false claim, as well as for twice the amount of the government's actual damages of $585 and the costs of the action. *Id.* at 439, 109 S.Ct. at 1897.

The United States Supreme Court held that the statutory penalty as applied to the defendant violated the Double Jeopardy Clause of the Fifth Amendment, observing that the fixed penalty provision was "overwhelmingly disproportionate" to the damage the offender caused. *Id.* at 448–50, 109 S.Ct. at 1901–03. The Supreme Court stated the following:

> a civil ... sanction constitutes punishment when the sanction *as applied* in the individual case serves the goals of punishment. ... [P]unishment serves the twin aims of retribution and deterrence.... We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction *to the extent* that the second sanction may not fairly be characterized as remedial, but *only* as a deterrent or retribution.

*Id.* at 448–49, 109 S.Ct. at 1902 (emphasis added). On the other hand the Supreme Court also stated that:

> a civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as *also* serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.

*Id.* at 448, 109 S.Ct. at 1902 (emphasis added).

In *Austin,* the federal government initiated civil forfeiture proceedings against Austin's auto body shop and mobile home after Austin pled guilty to a drug offense. The district court granted the government's motion for summary judgment, and Austin appealed, claiming that the forfeiture violated the Excessive Fines Clause of the Eighth Amendment. 509 U.S. at ——, 113 S.Ct. at 2803. The United States Court of Appeals

for the Eighth Circuit affirmed the district court, and the United States Supreme Court reversed. *Austin* specifically dealt with the Excessive Fines Clause of the Eighth Amendment. However, the decision has relevance to the Double Jeopardy Clause of the Fifth Amendment because both clauses require a threshold finding that the sanction in issue qualifies as a "punishment."

In overruling the Court of Appeals, the Supreme Court held that "sanctions frequently serve more than one purpose. We need not exclude the possibility that a forfeiture serves a remedial purpose to conclude that it is subject to the limitations of the Excessive Fines Clause. We, however, must determine that it can only be explained as serving *in part* to punish." 509 U.S. at ——, 113 S.Ct. at 2806 (emphasis added). The Court based this conclusion on the language in *Halper* in which it stated that a civil sanction which "can only be explained as *also* serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." 509 U.S. at ——, 113 S.Ct. at 2812 (quoting *Halper,* 490 U.S. at 448, 109 S.Ct. at 1902) (emphasis added).

In *Kurth Ranch* the Supreme Court addressed the question of whether Montana's drug tax violated the Double Jeopardy Clause. The Supreme Court ultimately concluded that the tax was punitive, and thus its post-conviction application violated the Double Jeopardy Clause. However, the Court noted that "neither a high rate of taxation nor an obvious deterrent purpose automatically mark this tax a form of punishment." —— U.S. at ——, 114 S.Ct. at 1946. Rather, the court reasoned, several "unusual features" of the tax set it apart from most taxes: (1) the tax was conditioned on the commission of a crime; (2) it was exacted only after the taxpayer had been arrested for the conduct which gave rise to the tax obligation and had paid all related state or federal fines, and all forfeitures had been satisfied; and (3) the tax was levied on goods that the taxpayer neither owned nor possessed when the tax was imposed. —— U.S. at ——, 114 S.Ct. at 1947–48.

Subsequent to *Kurth Ranch* the Ninth Circuit Court of Appeals decided *United States*

*v. $405,089.23 U.S. Currency,* 33 F.3d 1210 (9th Cir.1994), which involved the constitutionality of an *in rem* forfeiture action which culminated with a summary judgment in favor of the federal government after the property owners were successfully prosecuted for various counts of conspiracy to aid and abet the manufacture of methamphetamine and money laundering. 33 F.3d at 1214. The appellants argued that the forfeiture was barred by the Double Jeopardy Clause of the United States Constitution. The Ninth Circuit Court of Appeals agreed, relying on *Austin:*

> As the Supreme Court did in *Austin,* we conclude that the forfeiture statutes at issue here do not serve *solely* a remedial purpose. Accordingly, "Even assuming that [these statutes] serve *some* remedial purpose, the Government's argument must fail."

*Id.* at 1222 (quoting *Austin,* 509 U.S. at ——, 113 S.Ct. at 2812) (emphasis added).

Although this case was decided after *Kurth Ranch,* the Ninth Circuit Court of Appeals relied entirely on *Austin,* presumably because it specifically addressed the unique issue of the constitutionality of separate civil forfeiture actions against property owned by previously prosecuted defendants. Thus, like *Austin,* this case can best be understood as having limited application to that context. In *Austin* the Supreme Court reviewed the historically punitive nature of forfeiture actions. 509 U.S. at ——, 113 S.Ct. at 2804–10. It noted that, "the forfeiture of property ... [is] a penalty that ha[s] absolutely no correlation to any damages sustained by society or to the cost of enforcing the law." *Id.* at ——, 113 S.Ct. at 2812 (quoting *United States v. Ward,* 448 U.S. 242, 254, 100 S.Ct. 2636, 2644, 65 L.Ed.2d 742 (1980)).

In *Austin* the Court relied upon a segment of *Halper:*

> Fundamentally, even assuming that §§ 881(a)(4) and (a)(7) serve some remedial purpose, the Government's argument must fail. "[A] civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deter-

rent purposes, is punishment, as we have come to understand the term."

*Austin*, 509 U.S. at ——, 113 S.Ct. at 2812 (quoting *Halper*, 490 U.S. at 448, 109 S.Ct. at 1902).

Transplanting the *Austin* language to other types of cases without analyzing the context in which those statements were made could lead to a bright line rule that would preclude criminal prosecution wherever any other governmental action was taken against a person that had some deterrent purpose. Presumably a lawyer who took client funds improperly could not be prosecuted for theft if the lawyer were disbarred, if the disbarment had a deterrent as well as a remedial purpose. The reasoning in *Kurth Ranch* makes it clear that the U.S. Supreme Court did not intend such a bright line rule. Although *Kurth Ranch* was a five-four decision, all nine justices agreed that *Halper* held that a second sanction may not be imposed *to the extent* that it can *only* be characterized as a deterrent or retribution.[9] However, a primarily remedial sanction may serve some deterrent purposes without crossing the line to punishment for double jeopardy purposes.

The statement of purpose for Idaho Code section 18–8002A speaks in terms of providing "safety for all persons using the highways of this state by quickly revoking the driving privileges of those persons who have shown themselves to be safety hazards by driving with a blood alcohol content which exceeds the legal limit provided for in Section 18–8004, Idaho Code." *Statement of Purpose*, HB 252 (1993). This is clearly a remedial purpose. However, Talavera points out that the sponsor of House Bill 252 spoke in terms of the bill's general and specific deterrence of intoxicated drivers, as did several others who spoke in support of the bill's passage. *Senate Judiciary and Rules Committee Minutes.* In addition, the statute's deterrent effect is acknowledged in publications of the Idaho Department of Transportation.

As noted, the fact that a sanction serves some deterrent purpose is not dispositive. *Halper*, 490 U.S. at 448–49, 109 S.Ct. at 1902; *Kurth Ranch*, —— U.S. at ——, 114 S.Ct. at 1947. The proper inquiry is whether the sanction, as applied, bears a rational relationship to a legitimate remedial purpose. *Halper*, 490 U.S. at 449, 109 S.Ct. at 1902.

"The right of a citizen to operate a motor vehicle upon the public streets and highways, is subject to reasonable regulation by the state in the exercise of its police powers." *Adams v. City of Pocatello*, 91 Idaho 99, 101, 416 P.2d 46, 48 (1966). "When issued a license, the vehicle operator agrees to abide by certain conditions and rules of the road ... and acknowledges that the continued use of the license to drive is dependent on compliance with the laws relating to vehicle operation." *State v. Savard*, 659 A.2d 1265, 1267–68 (Me.1995). Thus, "suspension of that privilege merely signifies the failure of the holder to comply with the agreed conditions." *Id.* at 1268. Obviously one of the agreed conditions of the driving privileges is that the driver shall not operate a motor vehicle while under the influence of alcohol.

Like the administrative license suspension statute at issue in *Savard*, the stated purpose of section 18–8002A is to "provide maximum safety." *Id.* This objective is accomplished by expediting the removal of drivers who fail the BAC evidentiary test from the public roads, thus avoiding the often time-consuming delays inherent in criminal prosecutions. *Id.* The remedial purpose of the suspension is apparent and very directly addresses the problems of removing drivers from the road who should not be driving. Further, a 90–day suspension with the possibility of a restricted permit being issued after 30 days is not disproportionate to the statute's legitimate remedial goal of expeditious protection of the public from drunk drivers. The prosecution for driving under the influence is not barred under the double jeopardy provision of the Fifth Amendment to the United States Constitution.

---

9. The majority opinion thus characterizes *Halper* in *Kurth Ranch*, —— U.S. at ——, 114 S.Ct. at 1945; Justice O'Connor, with whom Chief Justice Rehnquist concurred, similarly characterizes

*Halper*, —— U.S. at ——, 114 S.Ct. at 1953; and Justice Scalia, with whom Justice Thomas concurred, likewise characterized the Court's holding in *Halper*, —— U.S. at ——, 114 S.Ct. at 1957.

## IV.

## CRIMINAL PROSECUTION OF THE DEFENDANT FOR VIOLATION OF SECTION 18–8004 OF THE IDAHO CODE IS NOT BARRED BY SECTION 18–301 OF THE IDAHO CODE

■ Talavera asserts that section 18–301 exceeds the scope of the constitutional constraint on double jeopardy, thus providing a defendant with expanded protection, relying on *State v. Lynch*, 126 Idaho 388, 390, 883 P.2d 1080, 1082 (1994). The State maintains that the generalized proscription against multiple punishments in section 18–301 is superseded by the later, more specific provision of section 18–8002A(6)(e),[10] which expressly provides that a suspension pursuant to section 18–8002A is in addition to any suspension imposed pursuant to section 18–8005 of the Idaho Code.

This Court addressed a similar argument in *State v. Killinger*, 126 Idaho 737, 890 P.2d 323 (1995), in which the defendant argued that his sentence was excessive under section 18–301, because each of his convictions for delivery of a controlled substance in the presence of a minor was based on the same conduct as one of his convictions for delivery of a controlled substance. *Id.* at 739, 890 P.2d at 325. However, the Court held that the crime of delivery of a controlled substance in the presence of children, pursuant to section 37–2737A of the Idaho Code, is specifically excepted from section 18–301's prohibition against multiple punishments for the same act or omission. The relevant language of section 37–2737A is as follows:

> Any fine imposed under the provisions of this section shall be in addition to the fine imposed for any other offense, and any term of imprisonment shall be consecutive

to any term imposed for any other offense, regardless of whether the violation of the provisions of this section and any of the other offenses have arisen from the same act or transaction.

I.C. § 37–2737A. The court based its conclusion on the rule that a more specific, later statute prevails over an earlier, more general one. *Id.* at 740, 890 P.2d at 326 (citing *State v. Wilson*, 107 Idaho 506, 508, 690 P.2d 1338, 1340 (1984); *Mickelsen v. City of Rexburg*, 101 Idaho 305, 307, 612 P.2d 542, 544 (1980)). The reasoning in Killinger is applicable to this case. Section 18–301 does not bar prosecution of Talavera for driving under the influence.

## V.

## CONCLUSION

The district court decision that the prosecution for driving under the influence is not barred by the double jeopardy component of the Fifth Amendment of the United States Constitution or by Idaho Code section 18–301 is affirmed.

McDEVITT, C.J., and JOHNSON, TROUT and SILAK, JJ., **concur.**

---

10. **18–8002A. Tests of driver for alcohol concentration, presence of drugs or other intoxicating substances—suspension upon failure of tests.—**

. . . .

(6) Administrative hearing on suspension.

. . . .

(e) . . . . If a license is suspended under this section and the person is also convicted on criminal charges arising out of the same occurrence for a violation of the provisions of section 18–8004, Idaho Code, both the suspension under this section and the suspension imposed pursuant to the provisions of section 18–8005, Idaho Code, shall be imposed, but the periods of suspension may run concurrently, with the total period of suspension not to exceed the longer of the applicable suspension periods.