48 P.3d 666

**In the Matter of the Driver's License Suspension of William Martin Marshall.**

**William Martin MARSHALL, Petitioner–Appellant,**

v.

**Idaho DEPARTMENT OF TRANSPORTATION, Respondent.**

No. 27495.

Court of Appeals of Idaho.

April 25, 2002.

Review Denied June 13, 2002.

338

Runyan and Woelk, P.C., Driggs, for appellant. Galen B. Woelk argued.

Hon. Alan G. Lance, Attorney General; Patrick Fanning, Deputy Attorney General, Boise, for respondent. Patrick Fanning argued.

PERRY, Chief Judge.

William Martin Marshall appeals from the district court's order affirming the Idaho Department of Transportation's decision denying Marshall's request to renew his driver's license. We affirm.

## I.

## BACKGROUND

Marshall moved to Idaho in 1992. Shortly after moving to Idaho he was convicted of driving under the influence (DUI). At the time of his conviction, Marshall did not have an Idaho driver's license but was a licensed driver of the state of Florida. As a consequence of the Idaho conviction, Marshall's privilege to drive on Idaho highways was suspended for ninety days and his Florida driver's license was seized and returned to Florida with a copy of his conviction. Prior to the Idaho conviction, Marshall had received two DUIs in Florida and one in Wyo-

ming. Florida law provides that the driver's license of any person convicted of four DUIs shall be permanently revoked.[1] When Florida received notice of Marshall's fourth DUI, it revoked his license and made the revocation effective as of the date of his 1992 judgment of conviction.

After at least ninety days had passed, Marshall applied for, and the department issued him, an Idaho driver's license. Marshall was subsequently convicted of another DUI in 1996 and his driver's license was again suspended for ninety days. After the suspension period, Marshall applied for reinstatement of his license and the request was granted. A new license was issued to Marshall with an expiration date of 2000. Several days before his license was to expire in 2000, Marshall filed a renewal application with the department. The department notified Marshall that his application was denied because his Florida driving privileges had been revoked and he therefore was not entitled to an Idaho license.

Marshall requested a formal hearing on the denial of his application. A hearing officer heard the matter and issued findings of fact and conclusions of law upholding the department's decision. Marshall filed a motion for reconsideration and an additional hearing was held. The hearing officer issued an order sustaining his previous decision. Marshall appealed to the director of the department, who affirmed the department's decision. The director adopted the findings of the hearing officer and noted that there was no dispute between the parties as to the facts of the case. The director concluded that Marshall was not entitled to have his license renewed in 2000 because I.C. §§ 49–303(5) and 49–319(1) prohibited the issuance and/or renewal of a license to any person whose license had been revoked in another state. Marshall filed a petition for judicial review with the district court, which also affirmed the department's decision. Marshall appeals.

## II.

## STANDARD OF REVIEW

▪ The Idaho Administrative Procedures Act (IDAPA) governs the review of

1. FLA. STAT. ch. 322.28(2)(e).

department decisions to deny, cancel, suspend, disqualify, revoke or restrict a person's driver's license. *See* I.C. §§ 49–201, 49–330, 67–5201(2), 67–5270. In an appeal from the decision of the district court acting in its appellate capacity under the IDAPA, this Court reviews the agency record independently of the district court's decision. *Howard v. Canyon County Bd. of Comm'rs*, 128 Idaho 479, 480, 915 P.2d 709, 710 (1996). This Court does not substitute its judgment for that of the agency as to the weight of the evidence presented. I.C. § 67–5279(1). This Court instead defers to the agency's findings of fact unless they are clearly erroneous. *Castaneda v. Brighton Corp.*, 130 Idaho 923, 926, 950 P.2d 1262, 1265 (1998). In other words, the agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by substantial competent evidence in the record. *Urrutia v. Blaine County, ex rel. Bd. of Comm's*, 134 Idaho 353, 357, 2 P.3d 738, 742 (2000).

■ The Court may overturn an agency's decision where its findings, inferences, conclusions, or decisions: (a) violate statutory or constitutional provisions; (b) exceed the agency's statutory authority; (c) are made upon unlawful procedure; (d) are not supported by substantial evidence in the record; or (e) are arbitrary, capricious, or an abuse of discretion. I.C. § 67–5279(3). The party challenging the agency decision must demonstrate that the agency erred in a manner specified in I.C. § 67–5279(3) and that a substantial right of that party has been prejudiced. *Price v. Payette County Bd. of County Comm'rs*, 131 Idaho 426, 429, 958 P.2d 583, 586 (1998); *Angstman v. City of Boise*, 128 Idaho 575, 577, 917 P.2d 409, 411 (Ct. App.1996). If the agency's decision is not affirmed on appeal, "it shall be set aside ... and remanded for further proceedings as necessary." I.C. § 67–5279(3).

## III.

## ANALYSIS

Marshall argues that the department was not statutorily entitled to refuse to renew his

license and that the department's refusal violated his right to be free from multiple prosecutions for the same offense. The state argues that the department erred when it issued Marshall a license in 1992 and 1996 and that Marshall was not entitled to a renewal in 2000. The state contends that the department was required to refuse Marshall's application for renewal pursuant to I.C. § 49–322. The state also asserts that its decision not to renew Marshall's license does not constitute an additional prosecution for an already prosecuted offense. Both parties concede that the facts of this case are not in dispute. Rather, the dispute concerns the department's application of the Idaho Code.

■ Statutory interpretation begins with the literal words of the statute, giving the language its plain, obvious and rational meanings. *Int'l Ass'n of Firefighters, Local No. 672 v. City of Boise City*, 136 Idaho 162, 169–70, 30 P.3d 940, 947–48 (2001). When interpreting the meaning of statutory language, a court will attempt to ascertain legislative intent. *Id*, at 170, 30 P.3d at 948. The appellate court conducts free review of issues of statutory interpretation. *Id*.

The department based its decision not to renew Marshall's license on I.C. § 49–322(1).[2] At the time Marshall sought renewal of his license that section stated:

(1) The department shall cancel any driver's license upon determining that the licensee was not entitled to the issuance of the driver's license, or that the licensee failed to give the required or correct information in his application, or committed fraud in making the application.

The department based its conclusion that Marshall was not entitled to the issuance of a driver's license on I.C. §§ 49–303(5) and 49–319(1). At the time Marshall sought renewal, those sections stated that the department shall not issue or renew any driver's license of a person whose license has been revoked by Idaho or any other jurisdiction. However, at the time Marshall was granted his first

2. This section was amended effective January 1, 2001.

and second Idaho licenses, the sections provided that the department would issue or renew any driver's license a year after the effective date of the revocation. Marshall argues that, at the time he received his first license in 1992, he was entitled to it under the then-existing law and that the department's refusal to issue him a license based upon the statutes as they existed in 2000 amounts to an ex-post facto application of those statutes.

In addition to the previously mentioned statutes, Idaho is a signatory to the Interstate Driver's License Compact, I.C. §§ 49–2001 to –2004. Since 1990, the Compact has provided that when a person applies for a driver's license, if the applicant has held a driver's license that has been revoked by any other party state, the state where the application is made shall not issue a driver's license to the applicant until the revocation has expired. I.C. § 49–2001, Art. V. Florida is also a signatory to the Compact. *See* FLA. STAT. ch. 322.44.

We need not reach the issue of whether the application of I.C. §§ 49–303(5) and 49–319(1) constitute an ex-post facto application of law because we conclude that the language of the Compact controls under the facts of this case. A basic tenet of statutory construction is that the more specific statute or section addressing the issue controls over the statute that is more general. *Mulder v. Liberty Northwest Ins. Co.*, 135 Idaho 52, 57, 14 P.3d 372, 377 (2000). Thus, the more general statute should not be interpreted as encompassing an area already covered by one which is more specific. *Id.*

Article V of the Compact specifically addresses the issuance of driver's licenses and states:

> Upon application for a driver's license to drive, the licensing authority in a party state shall ascertain whether the applicant has ever held driving privileges, or is the holder of a driver's license to drive issued by any other party state. The licensing authority in the state where application is

made shall not issue a driver's license to drive to the applicant if:

> (1) The applicant has held such a driver's license, but the same or driving privileges have been suspended by reason, in whole or in part, of a violation and if such suspension period has not terminated.

> (2) The applicant has held such a driver's license, but the same or driving privileges have been revoked by reason, in whole or in part, of a violation and if such revocation has not terminated.

> (3) The applicant is the holder of a driver's license to drive issued by another party state and currently in force unless the applicant surrenders such driver's license.

This section specifically provides that, when a person from one party state applies for a license in another party state, the license shall not be issued if the applicant held a driver's license in the previous state, but the same license has been revoked and the revocation has not terminated.

In 1992, the Compact was the only Idaho statute addressing the issuance of an Idaho driver's license to a person with a revoked license in a foreign jurisdiction. Neither I.C. §§ 49–303(5) nor 49–319(1) addressed such a situation in 1992.[3]

Our conclusion that the Compact is the more specific statute is also bolstered by the legislative intent behind the Compact. Article I of the Compact states, in pertinent part:

> (b) It is the policy of each of the party states to:

> (1) Promote compliance with the laws, ordinances, and administrative rules and regulations relating to the operation of motor vehicles by their operators in each of the jurisdictions where such operators drive motor vehicles.

> (2) Make the reciprocal recognition of drivers' licenses to drive and eligibility therefor more just and equitable by considering the overall compliance with motor vehicle laws, ordinances and administrative rules and regulations as a condition prece-

---

**3.** These statutes were later amended (I.C. § 49–303(5) in 1998 and I.C. § 49–319(1) in 1996) to provide that a driver's license would not be issued or renewed to a person who had a revoked driver's license in a foreign jurisdiction.

dent to the continuance or issuance of any driver's license by reason of which the licensee is authorized or permitted to operate a motor vehicle in any of the party states.

I.C. § 49–2001. Thus, the party states to the Compact are primarily concerned with promoting compliance with the driving laws of other party states. When reading the Compact as a whole, it becomes clear that the legislative intent behind the Compact is one of respecting the judgments and laws of other party states as to the issuance of driver's licenses. Our conclusion that the Compact is the more specific statute promotes that intent in this case.

Regardless of when Florida put Marshall's revocation into the national driving database, it remains that his Florida driver's license was revoked at the time he applied for the 1992 driver's license. Under the terms of the Compact, Marshall should never have been issued an Idaho license, but for whatever reason the department did issue one to him.

■ Marshall urges us to conclude that once a driver's license is issued, including those issued by mistake or due to a lack of information, the license must be automatically renewed upon application and, thus, can never be revoked. Marshall's argument flies in the face of I.C. § 49–322(1), which specifically provides a mechanism for the department to cancel any wrongfully issued license. In addition, Marshall's argument that he is not subject to the terms of the Compact is without merit. Marshall argues that once Idaho issued him a license in 1992, Idaho became his home state under the terms of the Compact. However, section V of the Compact does not condition its application upon the applicant having a different home state than the state where he or she is applying for a license. We conclude that when the department discovered in 2000 that Marshall's license was revoked in 1992 and that he was never entitled to a license under the terms of the Compact, the department was entitled to refuse to renew Marshall's license pursuant to I.C. § 49–322(1).

■ Marshall also contends that the department's refusal to renew his license amounts to a punitive act and transforms the department's ruling into a criminal penalty. As such, he argues that he is being punished twice for the same offense-the 1992 DUI-in violation of the Double Jeopardy Clauses of the United States and Idaho Constitutions. Marshall does not argue that the Idaho Constitution provides any greater protection than the United States Constitution in this case, so we will analyze his argument under the protections afforded by the Fifth Amendment of the United States Constitution. *See State v. Talavera,* 127 Idaho 700, 703, 905 P.2d 633, 636 (1995).

■ The Double Jeopardy Clause of the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." The Double Jeopardy Clause protects against three abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple criminal punishments for the same offense. *United States v. Halper,* 490 U.S. 435, 441, 109 S.Ct. 1892, 1898, 104 L.Ed.2d 487, 497 (1989); *Talavera,* 127 Idaho at 703, 905 P.2d at 636. The third abuse is the one asserted in this appeal. In determining whether a sanction constitutes a punishment under the Double Jeopardy Clause, the proper inquiry is whether the penalty, as applied, bears a rational relationship to a legitimate remedial purpose. *State v. Reichenberg,* 128 Idaho 452, 457, 915 P.2d 14, 19 (1996). Upon our review of the record, we conclude that the civil sanction in this case was not so punitive in nature as to be transformed into a criminal penalty for Double Jeopardy purposes. *See State v. McKeeth,* 136 Idaho 619, 623–24, 38 P.3d 1275, 1279–80 (Ct.App.2001), *State v. Ayala,* 129 Idaho 911, 919, 935 P.2d 174, 182 (Ct.App.1996). In addition, the Compact's prohibition against licensing a driver whose foreign license has been revoked is a legitimate remedial measure designed to prevent unsafe drivers from operating vehicles on Idaho's highways. *See* I.C. § 49–2001(a)(1); *Talavera,* 127 Idaho at 705, 905 P.2d at 638 (1995). Therefore, the department's decision not to renew Marshall's license does not violate the Double

Jeopardy Clauses of the United States and Idaho Constitutions.

## IV.

## CONCLUSION

We find no error in the department's decision not to renew Marshall's license. Therefore, the order of the district court, affirming the department's decision not to renew Marshall's license, is affirmed.

Judge LANSING and Judge Pro Tem STICKLEN concur.