# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 42682

| | | |
|---|---|---|
| JONNA LYNN BOBECK, | ) | 2015 Opinion No. 59 |
| | ) | |
| Petitioner-Appellant, | ) | Filed: September 24, 2015 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| IDAHO TRANSPORTATION | ) | |
| DEPARTMENT, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Nez Perce County. Hon. Jeff M. Brudie, District Judge.

Decision of the district court, acting in its appellate capacity, affirming the administrative suspension of driver's license, <u>affirmed</u>.

Clark and Feeney; Paul T. Clark, Lewiston, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Edwin L. Litteneker, Special Deputy Attorney General, Lewiston, for respondent.

_____

GRATTON, Judge

Jonna Lynn Bobeck appeals from the district court's decision upon judicial review affirming the Idaho Transportation Department's order suspending her driver's license. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The district court summarized the facts as follows:

On December 4, 2013, Petitioner Jonna Bobeck and her four-year-old son were in a motor vehicle accident around 9:30 p.m. Ms. Bobeck's vehicle, which was being pursued at a low speed by a Lewiston Police patrol vehicle, came to a stop after striking a utility pole and a stationary patrol vehicle with its overhead lights flashing. At the time of the accident, Bobeck was dressed only in a bathrobe and underwear and her four-year-old son, who was strapped in his car seat, was dressed in his pajamas. Bobeck was taken to the hospital in Lewiston to

1

be treated for her injuries. [An] Idaho State Trooper [ ] contacted Bobeck at the hospital and read her the administrative license suspension ("ALS") advisory form prior to a blood draw to test Ms. Bobeck for alcohol or other intoxicating substances. During the reading of the ALS form, Ms. Bobeck did not respond, was in a semi-conscious state, and has no memory of the events. The blood test revealed Ms. Bobeck had Zolpidem and Trazodone in her system, medications for which she has lawful prescriptions.

Bobeck's driver's license was subsequently suspended by the Idaho Transportation Department (ITD) for ninety days. Bobeck requested an administrative hearing to contest her administrative license suspension (ALS), during which she asserted she was not properly advised of the consequences of failing or refusing the test because she was asleep at the time the officer read the ALS advisory form to her. The hearing officer found that Bobeck was substantially informed of the consequences of failing or refusing evidentiary testing and sustained the ninety-day license suspension. Bobeck petitioned for judicial review by the district court. The district court affirmed the hearing officer's decision. Bobeck again appeals.[1]

## II.

## ANALYSIS

The administrative license suspension statute, Idaho Code § 18-8002A, requires that the ITD suspend the driver's license of a driver who has failed a blood alcohol concentration (BAC) test administered by a law enforcement officer. The period of suspension is ninety days for a driver's first failure of an evidentiary test and one year for any subsequent test failure within five years. I.C. § 18-8002A(4)(a). A person who has been notified of an ALS may request a hearing before a hearing officer designated by the ITD to contest the suspension. I.C. § 18-8002A(7). At the administrative hearing, the burden of proof rests upon the driver to prove any of the grounds to vacate the suspension. I.C. § 18-8002A(7); *Kane v. State, Dep't of Transp.*, 139 Idaho 586, 590, 83 P.3d 130, 134 (Ct. App. 2003). The hearing officer must uphold the suspension unless he or she finds, by a preponderance of the evidence, that the driver has shown one of several grounds enumerated in I.C. § 18-8002A(7) for vacating the suspension. Those grounds include:

---

[1]     A stay of Bobeck's license suspension was ordered pending the administrative hearing and written findings of fact and conclusions of law and order issued by the hearing officer. A stay was also ordered pending judicial review.

2

(a) The peace officer did not have legal cause to stop the person; or

(b) The officer did not have legal cause to believe the person had been driving or was in actual physical control of a vehicle while under the influence of alcohol, drugs or other intoxicating substances in violation of the provisions of section 18-8004, 18-8004C or 18-8006, Idaho Code; or

(c) The test results did not show an alcohol concentration or the presence of drugs or other intoxicating substances in violation of section 18-8004, 18-8004C or 18-8006, Idaho Code; or

(d) The tests for alcohol concentration, drugs or other intoxicating substances administered at the direction of the peace officer were not conducted in accordance with the requirements of section 18-8004(4), Idaho Code, or the testing equipment was not functioning properly when the test was administered; or

(e) The person was not informed of the consequences of submitting to evidentiary testing as required in subsection (2) of this section.

I.C. § 18-8002A(7).

An ITD administrative hearing officer's decision is subject to challenge through a petition for judicial review. I.C. § 18-8002A(8); *Kane*, 139 Idaho at 589, 83 P.3d at 133. The Idaho Administrative Procedures Act (IDAPA) governs judicial review of the ITD decisions to deny, cancel, suspend, disqualify, revoke, or restrict a person's driver's license. *See* I.C. §§ 49-201, 49-330, 67-5201(2), 67-5270. In an appeal from the decision of the district court acting in its appellate capacity under IDAPA, this Court reviews the agency record independently of the district court's decision. *Marshall v. Idaho Dep't of Transp.*, 137 Idaho 337, 340, 48 P.3d 666, 669 (Ct. App. 2002). This Court does not substitute its judgment for that of the agency as to the weight of the evidence presented. I.C. § 67-5279(1); *Marshall*, 137 Idaho at 340, 48 P.3d at 669. This Court instead defers to the agency's findings of fact unless they are clearly erroneous. *Castaneda v. Brighton Corp.*, 130 Idaho 923, 926, 950 P.2d 1262, 1265 (1998); *Marshall*, 137 Idaho at 340, 48 P.3d at 669. In other words, the agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by substantial and competent evidence in the record. *Urrutia v. Blaine County, ex rel. Bd. of Comm'rs*, 134 Idaho 353, 357, 2 P.3d 738, 742 (2000); *Marshall*, 137 Idaho at 340, 48 P.3d at 669.

This Court may overturn an agency's decision where its findings, inferences, conclusions, or decisions: (a) violate statutory or constitutional provisions; (b) exceed the agency's statutory authority; (c) are made upon unlawful procedure; (d) are not supported by substantial evidence in the record; or (e) are arbitrary, capricious, or an abuse of discretion. I.C. § 67-5279(3). The

3

party challenging the agency decision must demonstrate that the agency erred in a manner specified in I.C. § 67-5279(3) and that a substantial right of that party has been prejudiced. *Price v. Payette County Bd. of County Comm'rs*, 131 Idaho 426, 429, 958 P.2d 583, 586 (1998); *Marshall*, 137 Idaho at 340, 48 P.3d at 669.

## A.   License Suspension Advisory

At the time of evidentiary testing, law enforcement officers are required to inform drivers of the consequences of failing or refusing evidentiary testing for the presence of intoxicating substances. I.C. § 18-8002A(2). Bobeck contends that the hearing officer's finding that she was informed of the consequences of failing or refusing evidentiary testing is not supported by substantial and competent evidence because the record contains evidence that she was asleep when the officer read the ALS advisory to her.[2] The hearing officer relied on *State v. DeWitt*, 145 Idaho 709, 184 P.3d 215 (2008) in determining that Bobeck's level of consciousness was not determinative as to whether she was properly informed pursuant to I.C. § 18-8002A(2). In *DeWitt*, an officer read out loud an ALS advisory form while DeWitt was unconscious. This Court affirmed DeWitt's license suspension, despite the fact that he was unconscious when he was informed of the consequences of failing or refusing evidentiary testing for DUI because at that time, a drunken driver had no legal right to refuse evidentiary testing. *Id.* at 713-14, 184 P.3d at 219-20. Accordingly, we held that whether or not an officer advised a defendant of the consequences of refusal, the results of the evidentiary test were admissible in a criminal prosecution. *Id.* Bobeck argues that *DeWitt* has been overruled. *DeWitt* has been overruled only to the extent that it held that a driver had no legal right to refuse evidentiary testing. *See Missouri v. McNeely*, ___ U.S. ___, ___, 133 S. Ct. 1552, 1563 (2013); *State v. Wulff*, 157 Idaho 416, 423, 337 P.3d 575, 582 (2014).

Other courts, as well as state legislatures, have addressed the issue of whether an officer is required to ensure a driver understands an advisory when the officer reads it to them.[3] A

---

[2]   While there is conflicting testimony in the record as to the level of Bobeck's consciousness during the reading of the ALS form, it is undisputed that she was asleep or semi-conscious at least some of the time.

[3]   For example, Pennsylvania addressed the issue of whether an officer had a duty to ensure that a driver understood the consequences of refusing an evidentiary test where the driver did not understand the English language. *Martinovic v. Com. Dep't of Transp., Bureau of Driver Licensing*, 881 A.2d 30 (Pa. Commw. Ct. 2005). The *Martinovic* court held that, even where the

number of states have in fact codified the same principle, determining that an unconscious person may be tested for alcohol or other intoxicating substances and in such circumstances, notification of the consequences of refusing evidentiary testing is not necessary. *E.g.*, Cal. Veh. Code § 23612(a)(1)(5) (West 2015); Md. Code Ann., Transp. § 10-305(c) (West 2015); Minn. Stat. Ann. § 169A.51 (West 2015); N.C. Gen. Stat. Ann. § 20-16.2(b) (West 2015); N.D. Cent. Code Ann. § 39-20-03 (West 2015); Or. Rev. Stat. Ann. § 813.140 (West 2015). We agree with this principle.

The law requires that the officer inform the driver of the consequences of failing or refusing evidentiary testing. It does not require that the officer make certain the driver fully understands the advisory. Specifically, in this case we hold that police officers are not required to ensure comprehension of a person who is under the influence to the point of being semi-conscious or unconscious at times. *See Dewitt*, 145 Idaho at 714, 184 P.3d at 220. If law enforcement officers were required to ensure comprehension in order to comply with I.C. § 18-8002A(2), drivers could avoid suspension of their driver's licenses for any host of reasons, including being too intoxicated to understand the advisory. Although Bobeck was asleep or semi-conscious, the officer's reading of the advisory to her satisfied the statutory obligation to inform her of the consequences of failing or refusing evidentiary testing. Under these circumstances, the officer had no further duty to ensure that Bobeck comprehended the advisory before testing. Accordingly, the hearing officer did not err in concluding that Bobeck was properly informed of the consequences of failing or refusing evidentiary testing pursuant to I.C. § 18-8002A(2).

## B.     Implied Consent

Bobeck further contends that the hearing officer erred when it based its decision on the applicability of Idaho's implied consent statute, I.C. § 18-8002(1), arguing that the statute has been overruled. This is not the case. Requiring a person to submit to a blood draw for evidentiary testing is a search and seizure under the Fourth Amendment to the United States Constitution and Article I, Section 17 of the Idaho Constitution. *Schmerber v. California*, 384 U.S. 757, 767 (1966); *Wulff*, 157 Idaho at 418, 337 P.3d at 577. Therefore, warrantless

---

driver does not understand the English language, the police have no duty to make certain that he or she understands the consequences of refusing a blood test. *Id.* at 35-36. We need not go so far.

forced blood draws are generally violative of the state and federal constitutions. *McNeely*, ____ U.S. at ___, 133 S. Ct. 1552, 1558; *Wulff*, 157 Idaho at 419, 337 P.3d at 578. However, the warrant requirement does not apply if the person subjected to the search has consented. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973); *State v. Dominguez*, 137 Idaho 681, 683, 52 P.3d 325, 327 (Ct. App. 2002). Consent must be voluntary and not the result of duress or coercion, either direct or implied. *Schneckloth*, 412 U.S. at 248; *State v. Whiteley*, 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct. App. 1993). The voluntariness of an individual's consent is evaluated in light of all the circumstances. *United States v. Mendenhall*, 446 U.S. 544, 557 (1980); *Schneckloth*, 412 U.S. at 226-27; *State v. Hansen*, 138 Idaho 791, 796, 69 P.3d 1052, 1057 (2003); *Whiteley*, 124 Idaho at 264, 858 P.2d at 803. Mere acquiescence to a claim of authority by a law enforcement officer does not constitute consent. *Bumper v. North Carolina*, 391 U.S. 543, 549 (1968); *State v. Smith*, 144 Idaho 482, 488, 163 P.3d 1194, 1200 (2007); *State v. Tietsort*, 145 Idaho 112, 118, 175 P.3d 801, 807 (Ct. App. 2007). Whether consent was granted voluntarily, or was a product of coercion, is a question of fact to be determined by all the surrounding circumstances. *Hansen*, 138 Idaho at 796, 69 P.3d at 1057. The State bears the burden to prove consent by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974); *Hansen*, 138 Idaho at 796, 69 P.3d at 1057; *State v. Kilby*, 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct. App. 1997).

Once given, consent may also be revoked for "[i]nherent in the requirement that consent be voluntary is the right of the person to withdraw that consent." *State v. Halseth*, 157 Idaho 643, 646, 339 P.3d 368, 371 (2014). Thus, after a defendant has revoked consent, officers no longer may act pursuant to that initial voluntary consent. *State v. Thorpe*, 141 Idaho 151, 154, 106 P.3d 477, 480 (Ct. App. 2004). Of course, an individual may renew his consent after revoking it. *Id.*

Relying on *Wulff*, Bobeck claims that following *McNeely*, the Idaho Supreme Court has held that Idaho's implied consent law violated the Fourth Amendment, and therefore, she did not consent to the warrantless blood draw. This Court has explained the state of Idaho's implied consent statute in light of the United States Supreme Court's decision in *McNeely*, rejecting Bobeck's contention:

> In *Wulff*, our Supreme Court held that the district court "properly concluded that Idaho's implied consent statute was not a valid exception to the warrant requirement." *Wulff*, 157 Idaho at 423, 337 P.3d at 582. At first glance,

this holding would appear to preclude the State from continuing to rely on the implied consent statute to provide the requisite consent for a warrantless blood draw in a suspected DUI case. However, in addressing the constitutionality of the statute, the *Wulff* Court made a salient distinction. It identified "two hurdles" the statutory consent must overcome to "qualify as voluntary: (1) drivers give their initial consent voluntarily and (2) drivers must continue to give voluntary consent." *Id*. The Court considered that the first hurdle was met by the statute: "Drivers in Idaho give their initial consent to evidentiary testing by driving on Idaho roads *voluntarily*." *Id*. (emphasis added). It was the second hurdle the [C]ourt found problematic, noting that Idaho appellate decisions interpreting section 18-8002 had held that a person could not revoke his statutorily implied consent. "Because Idaho does not recognize a driver's right to revoke his implied consent," the Court held, "Idaho has a per se exception to the warrant requirement." *Wulff*, 157 Idaho at 423, 337 P.3d at 582. Thus, the Court held, it was overruling previous case law "to the extent that they applied Idaho's implied consent statute as an irrevocable per se rule that constitutionally allowed forced warrantless blood draws." *Id*.

That Idaho's implied consent statute continues to be valid, albeit in a form that is revocable, is supported by two subsequent cases issued by our Supreme Court. Approximately one month after *Wulff*, the Court decided *Halseth*, 157 Idaho 643, 339 P.3d 368, holding:

> [A]n implied consent statute such as . . . Idaho's does not justify a warrantless blood draw from a driver who refuses to consent . . . or objects to the blood draw . . . . Inherent in the requirement that consent be voluntary is the right of the person to withdraw that consent.

*Id.* at 646, 339 P.3d at 371. Then, several weeks later in *State v. Arrotta*, 157 Idaho 773, 774, 339 P.3d 1177, 1178 (2014), the Court cited to *Wulff* and *Halseth* for the proposition that "a suspect can withdraw his or her statutorily implied consent to a test for the presence of alcohol." Taken together, these decisions lead to the conclusion that Idaho's law regarding statutorily implied consent retains validity, but that consent may be terminated by a defendant's refusal, protest, or objection to alcohol concentration testing.

*State v. Smith*, ___ Idaho ___, ___, 355 P.3d 644, ___ (Ct. App. 2015) (footnotes omitted) (internal citations omitted).

In this ALS context, we need not determine the legality of the blood draw. However, addressing Bobeck's argument, we turn to the application of the facts in this case as they relate to the current state of the law. Any person who drives or is in actual physical control of a motor vehicle in Idaho consents to be tested for alcohol, at the request of a peace officer with reasonable grounds to believe the person drove under the influence, which includes consent to draw blood. I.C. § 18-8002(1), (10). However, the suspect may withdraw his or her consent by affirmatively resisting the blood draw. *Halseth*, 157 Idaho 643, 646, 339 P.3d 368, 371. Here, Bobeck impliedly consented to be tested for alcohol by driving a motor vehicle in Idaho. At no

7

point did Bobeck object to or resist the blood draw. The fact that she was allegedly unconscious when the officer read her the advisory does not effectively operate as a withdrawal of her consent. Therefore, Bobeck's statutorily implied consent was effective at the time of the warrantless blood draw as it was justified by Idaho's implied consent statute.

## III.

## CONCLUSION

The hearing officer did not err in concluding that Bobeck was properly informed of the consequences of failing or refusing evidentiary testing pursuant to I.C. § 18-8002A(2), or that Bobeck impliedly consented to a warrantless blood draw. Accordingly, we affirm the district court's decision upon judicial review affirming the ITD's order suspending Bobeck's driver's license.

Chief Judge MELANSON **CONCURS**.

Judge GUTIERREZ, **DISSENTING**

I respectfully dissent from the majority's conclusion that Bobeck consented to a blood draw. Since the United States Supreme Court issued *Missouri v. McNeely*, ___ U.S. ___, 133 S. Ct. 1552 (2013), the Idaho Supreme Court has not yet addressed unconscious drivers within the context of Idaho's implied consent law. In my view, an unconscious individual is incapable of giving the consent required for a warrantless blood draw. Because Bobeck did not give actual consent to the blood draw, there is no warrant requirement exception applicable here. The warrantless search (the blood draw) was therefore unconstitutional.

The majority notes that a warrantless search must fall into a warrant requirement exception, such as consent. Idaho Code § 18-8002 creates implied consent in an attempt to satisfy the warrant requirement exception, allowing officers to perform warrantless evidentiary tests on suspected intoxicated drivers. But statutorily implied consent is insufficient to satisfy the consent exception to the warrant requirement. The consent exception requires actual consent. Implied consent may lead to actual consent when a driver agrees to submit to an evidentiary test. But without such agreement, there is no consent for performing the test. Indeed, the majority, citing *Bumper v. North Carolina*, 391 U.S. 543, 549 (1968), acknowledges that "mere acquiescence to a claim of authority by a law enforcement officer does not constitute consent." Instead, as Justice W. Jones writes in a concurrence for the recently issued decision in *State v. Haynes*, ___ Idaho ___, ___ P.3d ___ (Aug. 20, 2015), a driver must either give actual consent,

8

or "object or take steps to withdraw her implied consent." *See also State v. Riendeau*, ___ Idaho ___, ___ P.3d ___ (Aug. 24, 2015) (Jones, W., J., concurring) (recognizing the "well-established rule that an explicitly recognized exception to the warrant requirement is needed," and disagreeing with the majority's holding that a reasonable search (i.e., an evidentiary test) is sufficient to justify a warrantless search).

There is little discussion on the term "actual consent" within the context of implied consent laws. The Court of Appeals of Wisconsin clarified and distinguished between actual consent and implied consent. In *State v. Padley*, 849 N.W.2d 867, 879 (Wis. Ct. App. 2014), the court held that if a driver consents to a blood draw after being read the advisement, the driver's consent is actual--not implied.[1] If the driver refuses to submit to a blood draw, the driver withdraws "implied consent." *Id.* The *Padley* court noted the term "implied consent" is "used inappropriately to refer to the consent a driver gives to a blood draw at the time a law enforcement officer requires that driver to decide whether to give consent." *Id.* at 876. Instead, "implied consent" refers to the driver's choice to impart or refuse actual consent to a blood draw. *Id.* at 879. But "implied consent," as set forth in the statute, does not replace actual consent. Actual consent is still required to perform the blood test. The *Padley* court concluded that any search of drivers covered by the state's implied consent law must be based on a warrant, actual consent, or another warrant requirement exception. *Id.* at 882. Effectively, that court distinguished implied consent from actual consent, holding that even within the context of implied consent laws, a search requires actual consent.

Similarly, in Justice W. Jones' concurrence in *Haynes*, he describes Idaho's implied consent law as a choice--a driver may elect to revoke her implied consent by refusing an evidentiary test and face harsh administrative penalties, or a driver may elect to continue to give her voluntary consent by taking an evidentiary test and run the risk of failing, thereby facing criminal charges for driving under the influence. Recognizing the need to effectively enforce DUI laws, Justice W. Jones writes that "it is reasonable for the Legislature to encourage or incentivize this choice." But an unconscious person is unable to make this choice. When the

---

[1]    Neither *State v. Haynes*, ___ Idaho ___, ___ P.3d ___ (Aug. 20, 2015), *State v. Riendeau*, ___ Idaho ___, ___ P.3d ___ (Aug. 24, 2015), nor *State v. Padley*, 849 N.W.2d 867, 879 (Wis. Ct. App. 2014*)* are administrative licensing cases--rather, they are criminal cases and the United States Supreme Court has not yet indicated whether constitutional safeguards apply equally to both administrative cases and criminal cases.

officer drew Bobeck's blood, the officer made that choice for Bobeck. And while the majority cites several state statutes that expressly permit officers to draw blood from unconscious drivers, Idaho does not have such a statute.

Here, the officer did not ask Bobeck to submit to the test. He merely read the ALS form to Bobeck, which informed Bobeck of her right to refuse to submit to the test. Bobeck did not give actual consent to a blood draw, and she was unable to otherwise resist, protest, or object to a blood draw.

As the majority further notes, consent must be voluntary, and whether consent is voluntary is determined by the totality of circumstances. Idaho precedent makes clear that implied consent must overcome two hurdles to qualify as voluntary: "(1) drivers give their initial consent voluntarily and (2) drivers must continue to give voluntary consent." *State v. Wulff*, 157 Idaho 416, 423, 337 P.3d 575, 582 (2014). In Justice W. Jones' concurrence in *Haynes*, he elaborates, "Idaho's implied consent statute requires the State to prove that a driver gave his or her initial consent voluntarily and also gave voluntary consent at the time of the evidentiary test." *Haynes*, ___ Idaho at ___, ___ P.3d at ___. Justice Jones stresses that unless a driver objects or takes steps to withdraw implied consent, the driver must still give actual, voluntary consent to a blood draw. *Id.* at ___, ___, ___ P.3d at ___, ___.

The totality of circumstances analysis for determining whether consent is voluntary confirms that one circumstance--driving on Idaho roads--is insufficient to constitute actual, voluntary consent. If voluntarily driving on the roads was sufficient, the second prong articulated in *Wulff* (drivers must continue to give voluntary consent) would be superfluous, and there would be no need for a totality of circumstances analysis (which is required).

In sum, despite the misleading term "implied consent law," actual consent is still required for a warrantless blood draw.

10