# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 40149

| | | |
|---|---|---|
| STATE OF IDAHO, TRANSPORTATION DEPARTMENT, | ) ) ) | 2013 Opinion No. 50 |
| Petitioner-Appellant, | ) ) | Filed: September 10, 2013 |
| v. | ) ) | Stephen W. Kenyon, Clerk |
| MARINA KALANI-KEEGAN, | ) ) | |
| Respondent. | ) ) ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John R. Stegner, District Judge.

Decision of the district court, affirming administrative order suspending a driver's license for failing blood alcohol concentration test, reversed.

Hon. Lawrence G. Wasden, Attorney General; Susan K. Servick, Special Deputy Attorney General, Coeur d'Alene, for appellant. Susan K. Servick argued.

Greg D. Horne, Coeur d'Alene, for respondent.

_____

MELANSON, Judge

The State of Idaho Transportation Department (ITD) appeals from the district court's decision, upon judicial review, affirming the ITD's order vacating the suspension of Marina Kalani-Keegan's driver's license after she failed a blood alcohol concentration test. For the reasons set forth below, we reverse.

## I.

## FACTS AND PROCEDURE

On June 10, 2011, an officer stopped Kalani-Keegan's vehicle for failure to maintain its lane of travel. The officer detected an odor of alcohol and administered field sobriety tests, which Kalani-Keegan failed. Kalani-Keegan was arrested for driving under the influence (DUI) and taken to a medical center for an involuntary blood draw. A probable cause affidavit in support of Kalani-Keegan's arrest dated June 14 and bearing a signature of the arresting officer was received by the ITD on June 17. The results of the blood alcohol test, which were available

1

on June 23, revealed that Kalani-Keegan's blood alcohol concentration was above the legal limit. On June 29, the ITD sent Kalani-Keegan a notice of administrative license suspension (ALS).

In July, Kalani-Keegan requested an administrative hearing to contest the suspension of her license. On August 11, the same day as the hearing, the hearing officer issued its findings of fact and conclusions of law and order.[1] The hearing officer vacated the suspension of Kalani-Keegan's license because the required documents were not forwarded to the ITD in compliance with I.C. § 18-8002A(5)(b). Specifically, I.C. § 18-8002A(5)(b) provides that, within five business days following service of a notice of suspension, the arresting officer shall forward to the ITD a sworn statement of the officer, which may incorporate any arrest or incident reports relevant to the arrest and evidentiary testing. The hearing officer found that, because the probable cause affidavit did not contain the original signature of the arresting officer, the notary certificate which followed was invalid.[2] On August 23, the ITD filed a motion for reconsideration, which contained a statement from the notary whose name appeared on the probable cause affidavit. In her statement, the notary declared that the arresting officer appeared before her on June 14 and, in her presence, signed the probable cause affidavit relating to the DUI arrest of Kalani-Keegan. On September 20, the hearing officer issued an order denying the motion. On October 7, the ITD filed a petition for judicial review. The district court affirmed the hearing officer's decision. The ITD appeals.

---

[1] There is no transcript of the ALS hearing in the record because the ITD did not request it in its notice of appeal. However, the ITD asserts, and Kalani-Keegan does not dispute, that Kalani-Keegan's counsel made no legal or factual argument at this hearing and merely asked the hearing officer to leave the record open for fifteen days to provide an opportunity to supplement the record. This request was apparently granted.

[2] There is nothing in the record to explain why the hearing officer determined the signature was not original. The ITD complains the hearing officer made the determination erroneously. Kalani-Keegan replies that the hearing officer presumptively had possession of, or access to, the original copies of the documents that were sent to the ITD, including the sworn statement, and made a factual determination, apparently based upon his own observation, that the affidavit did not contain the original signature of the arresting officer.

## II.

## STANDARD OF REVIEW

The ALS statute, I.C. § 18-8002A, requires that the ITD suspend the driver's license of a driver who has failed a blood alcohol concentration test administered by a law enforcement officer. A person who has been notified of such an ALS may request a hearing before a hearing officer designated by the ITD to contest the suspension. I.C. § 18-8002A(7). The hearing officer must uphold the suspension unless he or she finds, by a preponderance of the evidence, that the driver has shown one of five grounds enumerated in I.C. § 18-8002A(7) for vacating the suspension. Once the driver has made an initial prima facie showing of evidence proving some basis for vacating the suspension, the burden shifts to the state to rebut the evidence presented by the driver. *See Kane v. Idaho Dep't of Transp.*, 139 Idaho 586, 590, 83 P.3d 130, 134 (Ct. App. 2003).

An ITD administrative hearing officer's decision regarding the suspension of a person's driver's license is subject to challenge through a petition for judicial review. I.C. § 18-8002A(8); *Kane,* 139 Idaho at 589, 83 P.3d at 133. The Idaho Administrative Procedures Act (IDAPA) governs judicial review of the ITD decisions to deny, cancel, suspend, disqualify, revoke, or restrict a person's driver's license. *See* I.C. §§ 49-201, 49-330, 67-5201(2), 67-5270. In an appeal from the decision of the district court acting in its appellate capacity under IDAPA, this Court reviews the agency record independently of the district court's decision. *Marshall v. Idaho Dep't of Transp.*, 137 Idaho 337, 340, 48 P.3d 666, 669 (Ct. App. 2002). This Court may overturn an agency's decision where its findings, inferences, conclusions, or decisions: (a) violate statutory or constitutional provisions; (b) exceed the agency's statutory authority; (c) are made upon unlawful procedure; (d) are not supported by substantial evidence in the record; or (e) are arbitrary, capricious, or an abuse of discretion. I.C. § 67-5279(3).

## III.

## ANALYSIS

### A.      Prejudice to a Substantial Right

It is well established that the party challenging an agency decision must demonstrate the agency erred in a manner specified in I.C. § 67-5279(3) and that a substantial right of that party has been prejudiced. *Wheeler v. Idaho Dep't of Health & Welfare*, 147 Idaho 257, 260, 207 P.3d 988, 991 (2009). Further, nothing in IDAPA requires the courts to address these two

3

requirements in any particular order. *Hawkins v. Bonneville Cnty. Bd. of Comm'rs*, 151 Idaho 228, 232, 254 P.3d 1224, 1228 (2011). Therefore, an agency's decision may be affirmed solely on the grounds that the petitioner has not shown prejudice to a substantial right. *Id.* In other words, the courts may forego analyzing whether an agency erred in a manner specified by I.C. § 67-5279(3) if the petitioner does not show that a substantial right was violated. *Id.*

Citing *Wheeler* and *Hawkins*, the district court affirmed the hearing officer's decision without addressing the substantive issues raised by the ITD[3] because it determined the ITD had not established, or even alleged, that a substantial right was violated. Kalani-Keegan argues that, having failed to specifically allege that a substantial right was prejudiced, the ITD is precluded from raising the issue for the first time on appeal. The ITD responds that Kalani-Keegan's argument has no merit because, in an appeal from the decision of the district court acting in its appellate capacity under IDAPA, this Court reviews the agency record independently of the district court's decision. Thus, the ITD concludes this Court should review the issue of whether the substantial rights of the ITD were violated by the unfair decision-making process of the hearing officer.

We must decide whether, and to what extent in an ALS proceeding, the ITD must allege and demonstrate prejudice to a substantial right. In an ALS proceeding, the ITD is the statutorily[4] designated representative of the state and the interests of the people of the state that lie behind the driver's license suspension law. As such, the ITD has, as a matter of law, substantial rights in the fairness of the decision-making process and the outcome of the proceeding--namely, proper adjudication through application of correct legal standards which, upon violation, are prejudiced. While in some proceedings there may be parties that can demonstrate a substantial interest in the matter such that it can then be adjudicated, the directly affected parties--in this case statutorily mandated--have substantial rights in the proceeding as a matter of law. In *Hawkins*, the Idaho Supreme Court recognized a substantial right to fairness

---

[3]    The ITD asserted in its petition that "the actions by the hearing officer were not supported by law or fact and/or the record before the agency including the following issue[]: the sufficiency of the probable cause affidavit submitted by the police officer in support of the license suspension." The ITD brief filed with the district court asserted, among other things, that the hearing officer "did not comply with the mandates of Idaho Code Section 18-8002 and 18-8002A."

[4]    Idaho Code Section 18-8002A.

owed to parties, which appears to be akin to a right to due process, in the context of land-use cases, stating:

> Generally, as a procedural matter, all the parties involved in a land-use decision have a substantial right to a reasonably fair decision-making process. Governing boards owe procedural fairness not just to applicants but also their interested opponents. Both should expect proceedings that are free from procedural defects that might reasonably have affected the final outcome. *See Noble v. Kootenai Cnty.*, 148 Idaho 937, 942-43, 231 P.3d 1034, 1039-40 (2010) (holding that, even though the county board disallowed the public from participating in a site visit, doing so did not likely affect the decision); *Eacret v. Bonner Cnty.*, 139 Idaho 780, 787, 86 P.3d 494, 501 (2004) (vacating a county board's decision due to a commissioner's likely bias). This includes the right for all interested parties to have a meaningful opportunity to present evidence to the governing board on salient factual issues. *Cnty. Residents Against Pollution from Septage Sludge v. Bonner Cnty.*, 138 Idaho 585, 588-89, 67 P.3d 64, 67-68 (2003); *Sanders Orchard v. Gem Cnty. ex rel. Bd. of Cnty. Comm'rs*, 137 Idaho 695, 702, 52 P.3d 840, 847 (2002).
>
> These cases align with the overarching due-process principle that everyone with a statutory interest in the outcome of a decision is entitled to meaningful notice and a fair hearing before an impartial decision-maker. *Eacret*, 139 Idaho at 787, 86 P.3d at 501; *see also Eddins v. City of Lewiston*, 150 Idaho 30, 36, 244 P.3d 174, 180 (2010) ("[D]ue process rights are substantial rights."). Accordingly, the Legislature has provided that people who are affected by land-use proceedings for the most part have a statutory right to notice and for a chance to participate in a hearing. *E.g.* I.C. § 67-6512(2) (requiring public notice and hearing for special-use permits); *id.* § 67-6515 (planned-unit developments); *id.* § 67-6516 (variances).
>
> Of course, assuming that a decision is procedurally fair, applicants for a permit also have a substantial right in having the governing board properly adjudicate their applications by applying correct legal standards. *Lane Ranch P'ship v. City of Sun Valley*, 145 Idaho 87, 91, 175 P.3d 776, 780 (2007); *cf. Sagewillow, Inc. v. Idaho Dep't of Water Res.*, 138 Idaho 831, 842, 70 P.3d 669, 680 (2003) (remanding because the agency misstated the relevant legal standard and denied an application to transfer water rights). Landowner applicants, however, also have a substantial right to develop their own property. *Terrazas v. Blaine Cnty. ex rel. Bd. of Comm'rs*, 147 Idaho 193, 198, 207 P.3d 169, 174 (2009).
>
> On the other hand, when a petitioner *opposes* a governing board's decision to grant a permit authorizing development, as Hawkins has, the petitioner must still show, not merely allege, real or potential prejudice to his or her substantial rights. I.C. § 67-5279(4). Since a party *opposing* a landowner's request for a development permit has no substantial right in seeing someone else's application adjudicated correctly, he or she must therefore show something more. The petitioner opposing a permit must be in jeopardy of suffering substantial harm if the project goes forward, such as a reduction in the opponent's land value or

interference with his or her use or ownership of the land.  *See Price v. Payette Cnty. Bd. of Cnty. Comm'rs*, 131 Idaho 426, 431, 958 P.2d 583, 588 (1998) (vacating a board decision because it could impact property value or the petitioners' use and enjoyment of their land).  It would be instructive to look to law relating to property rights, nuisance, and trespass when determining if a substantial right is at stake in a case such as this.

*Hawkins*, 151 Idaho at 232-33, 254 P.3d at 1228-29.

Thus, directly interested parties (statutorily required parties in this case) generally have, as a procedural matter, substantial rights in a reasonably fair decision-making process and, of course, in proper adjudication of the proceeding by application of correct legal standards. However, it is principally those who, "on the other hand," assert an outside, secondary, or other interest that must "show something more."[5]  *Id*.  Idaho Code Section 67-5279(4) has dual components of the materiality of the effect of the decision--prejudice and standing.  The *Hawkins* Court underscores the substantial rights of an applicant as a directly interested party, but also addresses the rights and interests of "interested opponents" and "interested parties" and states that nonapplicant parties must show something more even if they may have statutorily provided rights to notice and a chance to participate.  *Hawkins*, 151 Idaho at 232-33, 254 P.3d at 1228-29. That is the standing component.  The *Hawkins* Court references and requires, as to opposing or interested parties such as Hawkins who was a neighbor to the property but not an applicant, demonstration of both the materiality of the harm and the existence of a substantial right.  The Court first mentions substantial harm such as diminution in value or interference with use, citing *Price v. Payette Cnty. Bd. of Cnty. Comm'rs*, 131 Idaho 426, 431, 958 P.2d 583, 588 (1998)

---

[5]      *Wheeler*, 147 Idaho at 260, 207 P.3d at 991 is cited by Kalani-Keegan for the proposition that it is the burden of the party contesting the ITD's decision to show how the ITD erred in a manner specified under I.C. § 67-5279 and to establish that a substantial right has been prejudiced.  That is true when not established as a matter of law.  Moreover, the proposition cited is merely a recitation of applicable standards, which we also routinely include in ALS opinions. *See In re Kimbley*, 154 Idaho 799, 802-03, 302 P.3d 1072, 1074-75 (Ct. App. 2013).  In *Wheeler*, although involving a license suspension under the Family Law License Suspensions Act, I.C. §§ 7-1401 to -1417, similar to numerous ALS opinions from the Supreme Court and this Court, while the proposition is stated, no discussion of any substantial right allegation, proof, demonstration, finding or issue is mentioned.  This is so because, the appeals, including intermediate appeal, involve the directly interested parties--the driver and the ITD, who have a substantial interest which is prejudiced by an erroneous decision.

(vacating a board decision because it could impact property value or the petitioners' use and enjoyment of their land). *Hawkins*, 151 Idaho at 233, 254 P.3d at 1229. The Court then turns to the existence of a substantial right, suggesting that it "would be instructive to look to law relating to property rights, nuisance, and trespass when determining if a substantial right is at stake in a case such as this." *Id*. The Court would not need to look to property rights, nuisance, and trespass if it was simply looking at materiality of harm.

It is difficult to imagine just what the district court would have the ITD submit to demonstrate prejudice to a substantial right.[6] Turning first to the issue of a substantial right or standing, there are only two parties to an appeal of an ALS decision--the driver and the ITD. *See* I.C. § 18-8002A.[7] In this context, these are the directly interested parties who, according to *Hawkins*, have *as a procedural matter*, a substantial right to a reasonably fair decision-making process and *of course* in the outcome of the proceeding by application of correct legal standards.

---

[6] The district court here stated that the ITD "has not alleged, much less established, that any of its substantial rights were prejudiced by the Hearing Officer's decision." Even in those cases, not present here, where some overt demonstration of prejudice to a substantial right is required, neither *Wheeler*, cited by the district court, nor any of the numerous ALS opinions which recite to the standards of review, require some form of pleading or allegation. Indeed, I.C. § 67-5279(4) states that, "notwithstanding the provisions of subsections (2) and (3) of this section, agency action shall be affirmed unless substantial rights of the appellant have been prejudiced."

[7] It is important to note that ALS proceedings represent an unusual place in the context of appeals of agency decisions, to which I.C. § 67-5279(4) might apply. Pursuant to I.C. § 18-8002A, the legislature designated the ITD to act on behalf of the state in processing and adjudication of license suspensions. A peace officer serves a driver with a notice of suspension or the ITD if the peace officer fails to do so. Upon receipt of the officer's sworn statement of probable cause, the ITD suspends the driver's license. The driver may request an administrative hearing. Pursuant to I.C. § 18-8002A(1)(f), the hearing officer is a person designated by the ITD. The hearing officer must enter an order vacating or sustaining the suspension. I.C. § 18-8002A(7). The hearing officer's decision is final. *Id*. In other circumstances, the final agency decision is made by the board (which would then not normally be in a position to appeal its own decision). A party to the ALS proceeding may appeal if aggrieved by the hearing officer's decision. I.C. § 18-8002A(8). While the ITD may be treated as an agency for purposes of judicial review, *see Wheeler*, 147 Idaho at 260, 207 P.3d at 991, in this unique situation, the ITD is the only entity with standing to prosecute an appeal of a hearing officer's erroneous decision to vacate a license suspension. The ITD is the party named as respondent in any appeal brought by a driver and may be the appellant from an adverse decision below. *See generally Kimbley*, 154 Idaho 799, 302 P.3d 1072.

7

*Hawkins*, 151 Idaho at 233, 254 P.3d at 1229. These substantial rights existing as a matter of course or procedure are established, demonstrated, and determined as a matter of law. There is no factual recitation or demonstration for the ITD to submit.[8] BLACK'S LAW DICTIONARY 1000 (8th ed. 2004), defines "matter of law" as a "matter involving a judicial inquiry into the applicable law." The existence of a substantial right in the ITD in an ALS proceeding and appeal is demonstrated and ascertained by the application of the statute and case law, not from any particular facts.

As to prejudice, the statute provides that the hearing officer must enter an order deciding the ultimate issue of whether the license suspension will be vacated or sustained, which order is final. I.C. § 18-8002A(7). As the district court noted, the ITD filed the petition for judicial review of the "decision vacating the suspension." This is not an appeal which involves some interlocutory decision or issue ancillary to the ultimate outcome[9] of an ALS proceeding vacating or sustaining a license suspension. The ITD contends that the hearing officer should have sustained, not vacated the suspension. This appeal involves both aspects of the substantial rights noted in *Hawkins*, namely whether the decision-making process was reasonably fair and whether the matter was properly adjudicated through the application of correct legal standards. *See Hawkins*, 151 Idaho at 233, 254 P.3d at 1229. Looking at prejudice from the standpoint of material effect, no more prejudicial effect can be shown than an erroneous decision on the

---

[8]    Surely, the ITD need not, in some pro forma sense, cite to the law, I.C. § 18-8002A and/or an abundance of published appellate ALS opinions that establishes its role in this context or its relationship to Kalani-Keegan in this case. At oral argument, Kalani-Keegan admitted that her substantial interest, should she have been the appellant, is a matter of law. There would be, as with the ITD, nothing factual for her to submit. And, similar to the ITD, she should not be required in some meaningless deference to formalism to cite to the very same law or cases that hold, as a matter of law, the importance of a driver's interest in her driver's license demands due process protections. *See Bell v. Idaho Transp. Dep't*, 151 Idaho 659, 664, 262 P.3d 1030, 1035 (Ct. App. 2011). The ITD has and can establish no general relationship to Kalani-Keegan or her license beyond that which I.C. § 18-8002A establishes as a matter of law.

[9]    In *Evans v. Bd. of Comm'rs*, 137 Idaho 428, 433, 50 P.3d 443, 448 (2002), the Court determined there was no prejudice to substantial rights when the county board visited a proposed site without notice, an issue subsidiary and ancillary to the question of approval of the application. *But see Comer v. Cnty. of Twin Falls*, 130 Idaho 433, 439, 942 P.2d 557, 563 (1997) (vacating a county board's decision when it made a site visit without notice). It cannot be more apparent that this type of issue, relative to prejudice, simply is not at play in this appeal.

8

ultimate outcome of a matter in which there can be but two opposing results.[10] Once again, it is difficult to imagine what the ITD could present to the district court in satisfaction of I.C. § 67-5279(4), other than what is apparent as a matter of fact and law, which would demonstrate prejudicial effect of an erroneous decision to vacate as opposed to sustain the suspension.

We next address whether the ITD is precluded from raising the question of prejudice to a substantial right for the first time on appeal.[11] Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d. 123, 126 (1992). However, we have concluded that the ITD has, as a matter of law, substantial rights in the decision-making process and that prejudice to those rights was adequately raised below. We need not further address this issue.

Thus, the district court erred in affirming the vacation of the suspension on the ground that the ITD did not allege or demonstrate prejudice to a substantial right. The substantial interest and the prejudicial effect of an erroneous decision of the hearing officer exist and are demonstrated as a matter of law. The ITD need not have done more.

## B. Hearing Officer's Decision

This Court, on appeal from the decision of the district court in its appellate capacity, reviews the agency record independently of the district court's decision. *Marshall*, 137 Idaho at

---

[10] Where it can be readily determined that either the particular party does not have a substantial interest in the matter, *Hawkins*, 151 Idaho at 233, 254 P.3d at 1229, and/or where that party's interest was not materially affected by the issue(s) raised on appeal, then determining first whether an error occurred at all may be unnecessary. However, here, as set forth above, the ITD has a substantial interest and one of two (along with the driver) stakes in the ALS proceeding--the ITD's being that of the state itself. So, an erroneous decision to vacate as opposed to sustain, predicated upon improper procedure or failure in the application of correct legal standards, materially prejudices the ITD's substantial interests. Thus, determination of whether error occurred is necessary.

[11] The question of whether a substantial right of the ITD has been violated is, essentially, one of standing--that is, whether the ITD has a substantial interest in the outcome of an ALS case. We have previously permitted the state to raise the question of a defendant's Fourth Amendment standing for the first time on appeal. *State v. Hanson*, 142 Idaho 711, 132 P.3d 468 (2006). The Ninth Circuit Court of Appeals has also permitted a lack of constitutional standing to be raised for the first time on appeal. *Laub v. United States Dep't of Interior,* 342 F.3d 1080 (9th Cir. 2003). However, we need not rely upon the applicability or rationale of these cases.

340, 48 P.3d at 669. Therefore, we address the merits of the appeal of the hearing officer's decision.

The hearing officer held as follows:

1. Idaho code § 18-8002A95)(b) provides that within five business days following service of a notice of suspension, the peace officer shall forward to the department, among other things, a sworn statement of the officer, which may incorporate any arrest or incident reports relevant to the arrest.
2. The probable cause affidavit acts as the sworn statement of the officer.
3. Exhibit 2, the probable cause affidavit, does not contain the original signature of the police officer, thereby invalidating the notary certificate which follows.
4. The probable cause affidavit does not meet the requirements of Idaho Code.
5. Therefore, the required documents were not forwarded to the Department in compliance with Idaho Code.

In addition, the hearing officer stated that a "fatal error in procedure requires this administrative license suspension to be vacated."

The hearing officer erred in several ways. First, the hearing officer determined that the packet of information to be sent to him must contain a sworn statement with an original signature of the arresting officer. Idaho Code Section 18-8002A(5)(b) requires, in pertinent part:

Within five (5) business days following service of a notice of suspension the peace officer shall forward to the department a copy of the completed notice of suspension form upon which the date of service upon the driver shall be clearly indicated, a certified copy or duplicate original of the results of all tests for alcohol concentration, as shown by analysis of breath administered at the direction of the peace officer, and a sworn statement of the officer, which may incorporate any arrest or incident reports relevant to the arrest and evidentiary testing setting forth . . .[12]

12     The applicable rule, IDAPA 39.02.72.200.01, states:

Upon service of a Notice of Suspension, a law enforcement agency shall, in accordance with Section 18-8002A, Idaho Code, forward the following documents to the Department within five (5) business days:
a.     Notice of Suspension.
b.     The sworn statement of the officer incorporating any arrest or incident reports relevant to the arrest and evidentiary testing.
c.     A certified copy or duplicate original of the test results or log of test results if the officer has directed an evidentiary test of the petitioner's breath.

Note that the statute is specific as to "a copy" of the suspension form and "a certified copy or duplicate original" of the test results. However, the statute simply says "a sworn statement" of the officer, without specificity as to whether it must be the original signed statement, a certified or duplicate original, or a copy. The hearing officer made a legal determination that the reference to "sworn statement" in the statute means an original document with original signature, but that conclusion is not compelled by either the statute or the IDAPA. Documentary evidence may be received in the form of copies or excerpts. Upon request, parties shall be given an opportunity to compare the copy with the original *if available*. IDAPA 04.11.01.601. There is no evidence Kalani-Keegan ever asked to compare an original to her copy or objected to the sworn statement rejected by the hearing officer.

Second, it appears that the hearing officer made an evidentiary ruling--that in an ALS proceeding, nothing but the original signature sworn statement will be accepted.[13] The Rules of Evidence do not apply and IDAPA 04.11.01.600 provides:

> Evidence should be taken by the agency to assist the parties' development of the record, not excluded to frustrate that development. The presiding officer at hearing is not bound by the Idaho Rules of Evidence. No informality in any proceeding or in the manner of taking testimony invalidates any order. The presiding officer, with or without objection, may exclude evidence that is irrelevant, unduly repetitious, inadmissible on constitutional or statutory grounds, or on the basis of any evidentiary privilege provided by statute or recognized in the courts of Idaho. All other evidence may be admitted if it is of a type commonly relied upon by prudent persons in the conduct of their affairs. The agency's experience, technical competence and specialized knowledge may be used in evaluation of evidence.

Third, the hearing officer rendered a legal conclusion that his perceived lack of an original signature had the effect of "invalidating the notary certificate." Without any citation to legal authority for that conclusion, we do not speculate as to its basis.

Fourth, the hearing officer rendered the further legal conclusion that a failure to submit an "original" signature constituted a "fatal error in procedure [that] requires this administrative

---

[13]     Perhaps the hearing officer had in mind the best evidence rule which generally calls for the original writing. *See* I.R.E. 1002. *But see* I.R.E. 1003 (allowing duplicates as evidence).

license suspension to be vacated." It is not clear why the hearing officer concluded that the perceived procedural error was fatal to the license suspension. Perhaps the reference to the invalidating of the notary certificate meant, to the hearing officer, that the sworn statement was no longer sworn, although it is not clear how that would constitute a procedural error.[14] Perhaps the statement that the required documents were not forwarded to the ITD in compliance with the Idaho Code constituted the fatal failure in procedure for the hearing officer. However, there is nothing in the Idaho Code which demands that the suspension be vacated upon some failing--perhaps, even minor, in the documentation.[15]

This leads, fifth, to the grounds for vacating a license suspension. The hearing officer must uphold the suspension unless he or she finds, by a preponderance of the evidence, that the driver has shown one of five grounds enumerated in I.C. § 18-8002A(7) for vacating the suspension. The grounds set forth in I.C. § 18-8002A(7) are:

> (a)     The peace officer did not have legal cause to stop the person; or
> (b)     The officer did not have legal cause to believe the person had been driving or was in actual physical control of a vehicle while under the influence of alcohol, drugs or other intoxicating substances in violation of the provisions of section 18-8004, 18-8004C or 18-8006, Idaho Code; or
> (c)     The test results did not show an alcohol concentration or the presence of drugs or other intoxicating substances in violation of section 18-8004, 18-8004C or 18-8006, Idaho Code; or
> (d)     The tests for alcohol concentration, drugs or other intoxicating substances administered at the direction of the peace officer were not conducted in accordance with the requirements of section 18-8004(4), Idaho Code, or the

---

[14]     As noted, Kalani-Keegan did not object to the sworn statement, its signature or notary certificate. More importantly, Kalani-Keegan did not contend that an irregularity in the sworn statement meant that it could not be considered and, thus, she had satisfied her burden to demonstrate a ground for vacating the suspension--lack of legal cause.

[15]     The ALS proceeding is not the equivalent of a criminal or civil trial in which the rules of procedure and evidence must be adhered. According to IDAPA 04.11.01.052:

> The rules in this chapter will be liberally construed to secure just, speedy and economical determination of all issues presented to the agency. Unless prohibited by statute, the agency may permit deviation from these rules when it finds that compliance with them is impracticable, unnecessary or not in the public interest. Unless required by statute, the Idaho Rules of Civil Procedure and the Idaho Rules of Evidence do not apply to contested case proceedings conducted before the agency.

testing equipment was not functioning properly when the test was administered; or

        (e)     The person was not informed of the consequences of submitting to evidentiary testing as required in subsection (2) of this section.

The failure to forward documentation mentioned in I.C. § 18-8002A(5) does not appear as a ground for vacating a suspension. Moreover, a perceived irregularity in the documentation does not appear as a ground for vacating a suspension. While the hearing officer here determined that the asserted procedural error required that the suspension be vacated, at the same time, the hearing officer expressly found that none of the grounds for vacating a suspension set forth in I.C. § 18-8002A(7) had been established.

Sixth, we turn to the unusual procedure employed by the hearing officer. We note that the hearing officer conducted the hearing at 9:00 a.m. and transmitted his detailed seven-page findings of fact and conclusions of law and order at 9:32 a.m. Apparently, the hearing officer had identified a problem with the sworn statement before the hearing, but then determined that there were no steps that could be taken to address the concern in securing the "just, speedy and economical determination" of the issues. The IDAPA allows the hearing officer to have some ex parte contact with staff, staff attorneys, and agency head so long as it is not with those directly involved in the investigation or prosecution of the instant matter. *See* IDAPA 04.11.01.423 and 424. On the other hand, while IDAPA 04.11.01.423.04 precludes a hearing officer from ex parte contact with the attorney for a party, Kalani-Keegan's counsel acknowledged at oral argument that the hearing officer called him before the ruling was issued to mention the concern about the sworn statement.

Seventh, it appears that the issue could have been remedied had the hearing officer taken up his duties with respect to the motion for reconsideration. Idaho Code Section 18-8002A(7)(e) provides that motions for reconsideration shall be allowed and new evidence can be submitted. According to IDAPA 39.02.72.600:

> The Hearing Officer shall make Findings of Fact, Conclusions of Law and Order either sustaining or vacating the license suspension in question. The Findings of Fact, Conclusions of Law and Order shall be the final order of the Department. A request for reconsideration must be made within fourteen (14) days of the issuance of the Findings of Fact, Conclusions of Law and Order. The request for reconsideration shall contain a request to submit new evidence if the party wishes the hearing officer to consider any new evidence.

13

On August 23, 2011, a motion for reconsideration was presented in which the notary submitted a statement declaring that the arresting officer appeared before her on June 14, 2011, and, in her presence, signed the probable cause affidavit. On September 20, 2011, the hearing officer entered an order denying the motion, stating that the "hearing officer failed to act upon the motion within ten (10) days of its receipt. The motion is thereby deemed Denied, in accordance with Idaho Code § 67-5243(3)." That statute provides:

> (3)     Unless otherwise provided by statute or rule, any party may file a motion for reconsideration of a recommended order or a preliminary order within fourteen (14) days of the service date of that order. The presiding officer shall render a written order disposing of the petition. The petition is deemed denied if the presiding officer does not dispose of it within twenty-one (21) days after the filing of the petition.

The hearing officer refused or failed to timely take up the merits of the motion for reconsideration. Further, the hearing officer deemed the motion denied after ten days, when the statute clearly references twenty-one days. The statute, by its express terms, only relates to motions (petitions) for reconsideration "of a recommended order or a preliminary order," and I.C. § 18-8002A(7)(e) states that the findings of fact, conclusions of law and order of the hearing officer is the final order. However, it appears that IDAPA 04.11.01.740.02.a indicates that motions for reconsideration of final orders will be decided within twenty-one days or considered denied by operation of law.

Thus, we conclude the ITD's substantial rights in the ALS proceeding, the fairness of the decision-making process, and the proper adjudication of the decision to vacate or sustain the license suspension through application of correct legal standards exist as a matter of law. The district court erred in demanding something more than that which the law provides. Moreover, the hearing officer's erroneous decision to vacate the suspension prejudiced those substantial rights.

## C.     Attorney Fees

Kalani-Keegen requests attorney fees on appeal pursuant to I.C. § 12-117. However, Kalani-Keegan is not the prevailing party. Therefore, we decline to award attorney fees.

14

## IV.

## CONCLUSION

We reverse the district court's decision upon judicial review affirming the ITD's order vacating the suspension of Kalani-Keegan's driver's license and we vacate the hearing officer's decision. Costs, but not attorney fees, are awarded to the ITD on appeal.

Chief Judge GUTIERREZ and Judge GRATTON, **CONCUR.**