# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 48830

| | | |
|---|---|---|
| BRIAN CLYDE WATKINS, JR., | ) | |
| | ) | Filed: January 24, 2022 |
| Petitioner-Appellant, | ) | |
| | ) | Melanie Gagnepain, Clerk |
| v. | ) | |
| | ) | THIS IS AN UNPUBLISHED |
| IDAHO TRANSPORTATION | ) | OPINION AND SHALL NOT |
| DEPARTMENT, | ) | BE CITED AS AUTHORITY |
| | ) | |
| Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Latah County. Hon. John Judge, District Judge.

Decision of the district court affirming hearing officer's order upholding the suspension of driver's license, affirmed.

Jay Johnson Law Office; James E. Johnson, Moscow, for appellant. Jay E. Johnson argued.

Hon. Lawrence G. Wasden, Attorney General; Susan K. Servick, Special Deputy Attorney General, Coeur d'Alene, for respondent. Susan K. Servick argued.

---

HUSKEY, Judge

Brian Clyde Watkins, Jr., appeals from the district court's decision affirming the Idaho Transportation Department's (Department) order upholding the suspension of Watkins' driver's license. Watkins argues his driver's license suspension should be vacated because the traffic stop was not supported by reasonable suspicion, the probable cause affidavit was fatally deficient, and the hearing officer improperly took official notice of Sergeant Middleton's breathalyzer certification. Because Watkins did not establish any of the statutory grounds to vacate his driver's license suspension, the district court's decision affirming the Department hearing officer's order upholding Watkins' driver's license suspension is affirmed.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

While on patrol around 9 p.m., Sergeant Middleton observed a truck traveling on a highway with its cargo light illuminated. The cargo light was mounted to the rear of the cab and was emitting a white light towards the back of the truck. Sergeant Middleton believed this to be a violation of Idaho Code § 49-910(3), which requires all lighting devices and reflectors mounted on the rear of a vehicle to emit a red light. Sergeant Middleton conducted a traffic stop of the truck and identified Watkins as the driver. Watkins exhibited multiple signs of impairment, and Sergeant Middleton suspected that Watkins was driving under the influence of alcohol (DUI). Sergeant Middleton asked Watkins to perform field sobriety tests, which Watkins failed. Watkins submitted to evidentiary breath testing, which indicated he had a breath alcohol concentration (BAC) of .092/.089. Sergeant Middleton cited Watkins for DUI.

As a result of the citation, Watkins was issued a notice of suspension of his driver's license. Watkins requested a Department hearing to challenge his administrative license suspension on two alternate bases: first, Sergeant Middleton did not have legal cause to stop Watkins for an illuminated white light on the back of his cab; and second, Sergeant Middleton's probable cause affidavit was deficient. Following a hearing, the hearing officer disagreed with both challenges and entered a final order affirming the suspension of Watkins' driver's license. Watkins filed a motion for reconsideration, reasserting his original arguments and also raising a new argument challenging the hearing officer's finding that Sergeant Middleton was certified to conduct the breathalyzer test. The hearing officer denied Watkins' motion for reconsideration. Watkins petitioned for judicial review. After a hearing, the district court affirmed the hearing officer's decision. Watkins timely appeals.

# II.

## STANDARD OF REVIEW

The administrative license suspension statute, I.C. § 18-8002A, requires the Department to suspend the driver's license of a driver who has failed a BAC test administered by a law enforcement officer. The period of suspension is ninety days for a driver's first failure of an evidentiary test and one year for any subsequent test failure within five years. I.C. § 18-8002A(4)(a). A person who has been notified of an administrative license suspension (ALS) may request a hearing before a hearing officer, designated by the Department, to contest the suspension.

2

I.C. § 18-8002A(7); *Kane v. Idaho Transp. Dep't*, 139 Idaho 586, 588, 83 P.3d 130, 132 (Ct. App. 2003). The burden of proof at an ALS hearing is on the individual challenging the license suspension. *Kane*, 139 Idaho at 590, 83 P.3d at 134. The hearing officer must uphold the suspension unless he or she finds, by a preponderance of the evidence, that the driver has shown one of several grounds enumerated in I.C. § 18-8002A(7) for vacating the suspension.

An administrative hearing officer's decision is subject to challenge through a petition for judicial review. I.C. § 18-8002A(8). The Idaho Administrative Procedures Act (IDAPA) governs judicial review of the Department's decisions to deny, cancel, suspend, disqualify, revoke, or restrict a person's driver's license. *Archer v. Idaho Transp. Dep't*, 145 Idaho 617, 619, 181 P.3d 543, 545 (Ct. App. 2008). In an appeal from the decision of the district court acting in its appellate capacity under IDAPA, this Court reviews the agency record independent of the district court's decision. *Marshall v. Idaho Transp. Dep't*, 137 Idaho 337, 340, 48 P.3d 666, 669 (Ct. App. 2002). This Court does not substitute its judgment for that of the agency as to the weight of the evidence presented. I.C. § 67-5279(1); *Marshall*, 137 Idaho at 340, 48 P.3d at 669. Instead, this Court defers to the agency's findings of fact unless they are clearly erroneous. *Castaneda v. Brighton Corp.*, 130 Idaho 923, 926, 950 P.2d 1262, 1265 (1998); *Marshall*, 137 Idaho at 340, 48 P.3d at 669. In other words, the agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by substantial and competent evidence in the record. *Urrutia v. Blaine Cnty., ex rel. Bd. of Comm'rs*, 134 Idaho 353, 357, 2 P.3d 738, 742 (2000); *Marshall*, 137 Idaho at 340, 48 P.3d at 669.

This Court may overturn an agency's decision where its findings, inferences, conclusions, or decisions: (a) violate statutory or constitutional provisions; (b) exceed the agency's statutory authority; (c) are made upon unlawful procedure; (d) are not supported by substantial evidence in the record; or (e) are arbitrary, capricious, or an abuse of discretion. I.C. § 67-5279(3). The party challenging the agency decision must demonstrate that the agency erred in a manner specified in I.C. § 67-5279(3) and that a substantial right of that party has been prejudiced. *Price v. Payette Cnty. Bd. of Cnty. Comm'rs*, 131 Idaho 426, 429, 958 P.2d 583, 586 (1998); *Marshall*, 137 Idaho at 340, 48 P.3d at 669.

The interpretation of a statute is an issue of law over which we exercise free review. *Aguilar v. Coonrod*, 151 Idaho 642, 649-50, 262 P.3d 671, 678-79 (2011). Such interpretation must begin with the literal words of the statute; those words must be given their plain, usual, and

ordinary meaning; and the statute must be construed as a whole. *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011). It is well established that where statutory language is unambiguous, legislative history and other extrinsic evidence should not be consulted for the purpose of altering the clearly expressed intent of the legislature. *Id.* Only where a statute is capable of more than one conflicting construction is it said to be ambiguous and invoke the rules of statutory construction. *L & W Supply Corp. v. Chartrand Family Trust*, 136 Idaho 738, 743, 40 P.3d 96, 101 (2002). If it is necessary for this Court to interpret a statute because an ambiguity exists, then this Court will attempt to ascertain legislative intent and, in construing the statute, may examine the language used, the reasonableness of the proposed interpretations, and the policy behind the statute. *Kelso & Irwin, P.A. v. State Ins. Fund*, 134 Idaho 130, 134, 997 P.2d 591, 595 (2000). Where the language of a statute is ambiguous, constructions that lead to absurd or unreasonably harsh results are disfavored. *See Jasso v. Camas Cnty.*, 151 Idaho 790, 798, 264 P.3d 897, 905 (2011).

## III.

## ANALYSIS

Watkins alleges the district court erred in affirming the hearing officer's order affirming the suspension of his driver's license because: (1) Sergeant Middleton did not have reasonable suspicion to stop Watkins; (2) Sergeant Middleton's probable cause affidavit was fatally deficient; and (3) the hearing officer improperly took official notice of Sergeant Middleton's breathalyzer certification. In response, the State argues the district court did not err.

Although a driver may challenge an ALS, the hearing officer must uphold the suspension unless he or she finds, by a preponderance of the evidence, that the driver has shown:

(a) The peace officer did not have legal cause to stop the person; or
(b) The officer did not have legal cause to believe the person had been driving or was in actual physical control of a vehicle while under the influence of alcohol, drugs or other intoxicating substances in violation of the provisions of section 18-8004, 18-8004C or 18-8006, Idaho Code; or
(c) The test results did not show an alcohol concentration or the presence of drugs or other intoxicating substances in violation of section 18-8004, 18-8004C or 18-8006, Idaho Code; or
(d) The tests for alcohol concentration, drugs or other intoxicating substances administered at the direction of the peace officer were not conducted in accordance with the requirements of section 18-8004(4), Idaho Code, or the testing equipment was not functioning properly when the test was administered; or

4

(e) The person was not informed of the consequences of submitting to evidentiary testing as required in subsection (2) of this section.

I.C. § 18-8002A(7).

**A.      Sergeant Middleton Had Reasonable Suspicion That Watkins Violated I.C. § 49-910(3)**

Watkins alleges that his license suspension should be vacated because Sergeant Middleton did not have reasonable suspicion to conduct the traffic stop. First, Watkins argues that I.C. § 49-910 "is strictly an equipment statute" and because all of his equipment was working, he did not violate the statute.[1] Second, Watkins argues that because the white cargo light was on the rear of the cab instead of the truck's tailgate area, the light was not mounted on the rear of the vehicle and, thus, did not violate the statute.

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *Id*. An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988).

Idaho Code § 49-910(3) provides:

> (3) All lighting devices and reflectors mounted on the rear of any vehicle shall display or reflect a red color, except the stoplight or other signal device, which may be red, amber, or yellow, and except that the light illuminating the license plate shall be white and the light emitted by a back-up lamp may be white, amber, or red.

---

[1]      It should be noted that while Sergeant Middleton conducted the traffic stop because he believed that a potential violation of Idaho Code § 49-910(3) provided reasonable suspicion, he did not cite Watkins for violating the statute.

5

As to Watkins' first argument, a similar argument was made and rejected by this Court in *State v. Patterson*, 140 Idaho 612, 614-15, 97 P.3d 479, 481-82 (Ct. App. 2004) (holding that officer had reasonable suspicion to conduct traffic stop when driver's taillights were emitting red light, in accordance with statute, but also white light, in violation of statute). Moreover, as discussed in *Patterson*, I.C. § 49-902(1) provides:

> It shall be unlawful for any person to drive, or move, or for the owner to cause or knowingly permit to be driven or moved on any highway any vehicle or combination of vehicles which is in an unsafe condition as to endanger any person, or which does not contain those parts or is not at all times equipped with the lamps and other requirements in proper condition and adjustment, as required by the provisions of this chapter, or which is equipped in any manner in violation of the provisions of this chapter.

Pursuant to this statute, if Watkins drove a truck which did not comply with the vehicle equipment requirements of I.C. § 49-910(3), then he was driving a vehicle equipped in a manner in violation of the provisions of I.C. § 49-902(1), which would provide a reasonable suspicion for the traffic stop. Thus, we must consider whether by driving his truck with the cargo light illuminated, Watkins violated I.C. § 49-910(3).

Idaho Code § 49-910 regulates the color of vehicle clearance lamps, side marker lamps, and reflectors and subsection (3) requires, with limited exceptions not relevant here, that "all lighting devices and reflectors mounted on the rear of any vehicle shall display or reflect a red color." However, because the statute does not define the word "rear," we are left to consider whether, as Watkins argues, the statutory language "rear of any vehicle" refers to only the extreme rear end of a vehicle, such that the rear of a truck is confined only to the area encompassing the tailgate and back bumper.

Rear is a directional term, referencing the back part of something. As applied to the body of a vehicle, the plain, usual, and ordinary meaning of the "rear of any vehicle" is the part of something located opposite the front or the space or position at the back. Here, the back of the cab is the rear or back of the vehicle's body; it is the part opposite the front of the vehicle. The fact that the tailgate is separated from the back of the cab by a truck bed does not change whether the back of the cab meets the statutory definition of the rear of the vehicle. Thus, the back of a truck's cab is part of the rear of the vehicle, and lights mounted on it emitting a light facing the rear must display or reflect a red color, with the limited exceptions provided for in the statute.

6

This is consistent with and reinforced by other statutory provisions within the chapter regulating motor vehicle equipment. For example, the statutory scheme uses the phrase "extreme rear end" when it wished to regulate the lights on loads that project past the body of a vehicle:

> Whenever the load upon any vehicle extends to the rear four (4) feet or more beyond the bed or body of the vehicle, there shall be displayed at the extreme rear end of the load, at the times specified in section 49-903, Idaho Code, a red light or lantern plainly visible from a distance of at least five hundred (500) feet to the sides and rear. The red light or lantern required under this section shall be in addition to the red rear light required upon every vehicle.

I.C. § 49-913.

Moreover, based on the plain language and when reviewing the motor vehicle equipment statutes as a whole, the statutory scheme requires that rear lights and reflectors that emit illumination to the rear of the vehicle display a red color. *See* I.C. § 49-906(1) ("Every motor vehicle, trailer, semitrailer, and pole trailer . . . shall be equipped with at least one (1) tail lamp mounted on the rear, which when lighted as required, shall emit a red light plainly visible from a distance of five hundred (500) feet to the rear."); I.C. § 49-907(1) ("Every motor vehicle sold and operated upon a highway, other than a truck tractor, shall carry on the rear, either as a part of the tail lamps or separately, two (2) red reflectors."); I.C. § 49-910(2) ("Rear clearance lamps and marker lamps and reflectors mounted on the rear or on the sides near the rear of a vehicle shall display or reflect a red color."); I.C. § 49-911(1) ("Reflectors required to be mounted on the sides of the vehicle shall reflect the required color light to the sides, and those mounted on the rear shall reflect a red color to the rear."); I.C. § 49-914(2) (when a vehicle is stopped or parked upon a highway without sufficient light to reveal persons or objects within 500 feet, "at least one (1) lamp shall display a white or amber light visible from a distance of five hundred (500) feet to the front of the vehicle, and . . . a red light visible from the same distance to the rear"); and I.C. § 49-919(1) (stop lamps "on the rear of the vehicle which shall display a red or amber light . . . visible from a distance of not less than one hundred (100) feet to the rear"). In the limited scenarios where the statutory scheme permits a light to emit a color other than red to the rear of a vehicle, the statute requires that white lights emit light to the front, not the rear of the vehicle. *See* I.C. § 49-920(4).

Similarly, the statutory section as a whole limits the potential risk for any white lights that are permissibly mounted elsewhere on the vehicle to emit glare that may impact other drivers or emit white light to oncoming traffic for a sustained period. *See* I.C. § 49-914(3) ("Any lighted head lamps upon a parked vehicle shall be depressed or dimmed."); I.C. § 49-919(3) ("No stop

7

lamp or signal lamp or device shall project a glaring light."); I.C. § 49-920(2) (vehicles "may be equipped with not more than one (1) running-board courtesy lamp on each side which shall emit a white or amber light without glare"); I.C. § 49-920(3) (vehicles "may be equipped with not more than two (2) back-up lamps either separately or in combination with other lamps, but any back-up lamp shall not be lighted when the motor vehicle is in forward motion"); and I.C. § 49-923(2) ("Whenever a driver of a vehicle approaches an oncoming vehicle within five hundred (500) feet, the driver shall use a distribution of light, or composite beam, so aimed that the glaring rays are not projected into the eyes of the oncoming driver."). Likewise, the statutory scheme limits the potential risk for any red light to emit towards the front of the vehicle. I.C. § 49-928(2) (with expressly authorized exceptions, "[n]o person shall drive or move any vehicle or equipment upon any highway with any lamp or device displaying a red light visible from directly in front of the center of the vehicle or equipment").

As a whole, the statutory section regulates lighting schemes both for the safety of other drivers and the predictability of vehicle movement when lighting is necessary. For example, we previously found a violation of I.C. § 49-910(3) when a vehicle's taillights emitted both a white and red light. *Patterson*, 140 Idaho at 615, 97 P.3d at 482. Therein we noted that the motor vehicle statutes "cannot be read to require taillights to emit red light but then also allow taillights to emit a light of any other color of a driver's choosing. If that were the case, there would be little or no conformity so that drivers could predict the motion of other vehicles." *Id*.

Under this principle, driving with white cargo lights mounted on the rear of a cab and emitting a white rear facing light, when all other rear facing lights must be red, reduces the conformity of vehicles and concomitantly reduces predictability for other drivers. Indeed, even at the hearing before the district court, Watkins conceded that driving with a cargo light illuminated was "potentially a safety issue" and "could cause confusion" for other drivers. Watkins' cargo light was mounted on the rear of his truck, therefore, I.C. § 49-910(3) requires that it emit red light while Watkins was driving.[2] Because Watkins' cargo light displayed a white light while he was driving, Sergeant Middleton had reasonable suspicion to conduct a traffic stop for violation of I.C. § 49-910(3).

---

[2]     Photographs in the record indicate that Watkins' cargo light had the option to display only a red light, in conformance to the statute. The additional illumination of the white light appears to be controlled from a panel inside the vehicle.

**B.** **The Technical Flaws in the Probable Cause Affidavit Do Not Provide Grounds to Vacate Watkins' Driver's License Suspension**

Watkins alleges Sergeant Middleton's probable cause affidavit did not qualify as a sworn statement as required by I.C. § 18-8002A because it contained known false statements, specifically that Sergeant Middleton did not include his certification as a breath test operator, left the section for the breathalyzer results blank, and incorrectly indicated that Watkins had refused the breathalyzer test.

While I.C. § 18-8002A(7) provides five statutory grounds for which a hearing officer may reverse the suspension of an individual's driver's license, none allow for the officer to vacate a driver's license suspension because of technical irregularities in the documents submitted to the Department. This Court has consistently held that technical flaws in the documentation submitted to the Department do not provide grounds to set aside a driver's license suspension. *See Idaho Transp. Dep't v. Kalani-Keegan*, 155 Idaho 297, 306, 311 P.3d 309, 318 (Ct. App. 2013) (holding "a perceived irregularity in the documentation does not appear as a ground for vacating a suspension"); *Kane*, 139 Idaho at 590, 83 P.3d at 134 (holding hearing officer is not authorized to vacate suspension based upon technical flaws in documents delivered to Department); *see also Atwood v. Idaho Transp. Dep't*, 155 Idaho 884, 887, 318 P.3d 653, 656 (Ct. App. 2014) (holding "[t]he burden of proof at an ALS hearing is on the individual requesting the hearing, and that burden is not satisfied merely by showing that the documents received by [the Department] are inadequate").

Watkins argues that our holdings in *Atwood*, *Kalani-Keegan*, and *Kane* should not apply to the facts in this case. First, Watkins contends in contrast to those cases, the errors in Sergeant Middleton's probable cause affidavit are more than individual technical mistakes, such that they make the document as a whole factually unreliable. We are not persuaded. A review of the errors in the affidavit shows that they were technical mistakes. Although a brief section of the affidavit labeled "D.U.I. NOTES" did not include Sergeant Middleton's certification number as a breath test operator or the breathalyzer results and indicated that Watkins refused evidentiary breath testing, these errors are in stark contrast to the majority of information in the affidavit. In his narrative portion of the probable cause affidavit, Sergeant Middleton describes in detail that Watkins participated in breathalyzer testing. Specifically, Sergeant Middleton detailed that Watkins participated in the required deprivation period prior to the test, was read the administrative license suspension form before the test, provided two breath samples on the Lifeloc FC20BT

9

machine, and failed the test by blowing a BAC of .092/.089. Sergeant Middleton concluded his narrative by stating that Watkins was cooperative and attempted to complete all tasks and tests offered. Further, all other accompanying documentation, including Sergeant Middleton's alcohol influence report and DUI citation, indicate that Watkins took and failed breathalyzer testing. Therefore, when the affidavit is viewed in its totality along with all relevant accompanying documentation, it is evident that the error in the "D.U.I. NOTES" section of the affidavit was a technical mistake that does not undermine the reliability of the document.

Second, to the extent that the errors in the probable cause affidavit are technical mistakes, Watkins argues that we should overturn our prior precedent and hold that such mistakes provide grounds to vacate a driver's license suspension. Stare decisis dictates that we follow controlling precedent, unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless overturning it is necessary to vindicate plain, obvious principles of law and remedy continued injustice. *State v. Bradshaw*, 155 Idaho 437, 439, 313 P.3d 765, 767 (Ct. App. 2013). We do not find that our holdings in *Atwood*, *Kalani-Keegan*, and *Kane* meet these principles, and as such, we decline to overturn them. Therefore, as previously articulated, a hearing officer is not authorized to vacate an administrative license suspension based upon technical flaws in documents delivered to the Department.

Watkins had the burden to present evidence affirmatively showing one or more of the grounds for relief enumerated in I.C. § 18-8002A(7). This burden is not met by merely showing that documents in the hands of the Department are inadequate or inadmissible to reveal whether legal cause existed or whether the test was conducted properly. *Kane*, 139 Idaho at 590, 83 P.3d at 134. Accordingly, Watkins' challenge to his driver's license suspension, based upon the technical errors in Sergeant Middleton's probable cause affidavit, is insufficient to meet this burden and consequently, is insufficient to set aside the license suspension.

### C. Watkins Did Not Meet His Burden in the ALS Hearing by Presenting Evidence That Sergeant Middleton Was Not Certified to Operate the Breathalyzer Test

Watkins alleges the hearing officer erred in finding that Sergeant Middleton was certified to administer the breathalyzer test. Specifically, Watkins argues the hearing officer exceeded his authority by reviewing Sergeant Middleton's breathalyzer certification on the Idaho State Police website, when the certification was not placed into evidence during the hearing. Watkins argues that without evidence of Sergeant Middleton's certification, the hearing officer erroneously found that Sergeant Middleton was certified to administer the breathalyzer test.

10

Watkins' argument misunderstands his burden of proof at the administrative hearing. While the failure of an officer to be properly certified to conduct a breathalyzer test may be grounds to vacate a driver's license suspension pursuant to I.C. § 18-8002A(7)(d), "[i]nitially, the burden of proof is on the driver to show by a preponderance of the evidence that the officer was not properly certified to operate the breath testing instrument." *Masterson v. Idaho Transp Dep't.*, 150 Idaho 126, 129, 244 P.3d 625, 628 (Ct. App. 2010). After the driver makes such a showing, the burden shifts to the State to rebut the driver's evidence showing lack of certification on the particular instrument used. *Id.*

Here, Watkins did not meet his burden to challenge Sergeant Middleton's breathalyzer certification. Watkins did not challenge Sergeant Middleton's certification in his ALS hearing petition, and the district court found that Watkins did not argue, let alone present evidence, that Sergeant Middleton was not certified to operate the breathalyzer machine in his ALS hearing. Specifically, the district court found that Watkins did not present at the administrative hearing any evidence that Sergeant Middleton was not certified to administer his breath tests. Instead, the district court found Watkins argued (in contrast to the established burden of proof) that because the Department did not present evidence showing that Sergeant Middleton was certified, Watkins license suspension must be vacated. Watkins neither challenges the district court's findings in this regard nor provides a transcript of the ALS hearing on which we could review these findings. It is the responsibility of the appellant to provide a sufficient record to substantiate his or her claims on appeal. *Powell v. Sellers*, 130 Idaho 122, 127, 937 P.2d 434, 439 (Ct. App. 1997). In the absence of an adequate record on appeal to support the appellant's claims, we will not presume error. *Id.* Consequently, we accept these findings as true for the purposes of this appeal. *Id.*

Watkins also argues the fact that Sergeant Middleton did not include his breathalyzer certification number in the probable cause affidavit is evidence that he was not certified. However, this argument neither establishes that Watkins affirmatively presented this as evidence to support a challenge to Sergeant Middleton's certification in the ALS hearing, nor does it retroactively satisfy Watkins' burden of proof. Because Watkins failed to provide any affirmative evidence that Sergeant Middleton was not certified at the ALS hearing, the burden never shifted to the State to proffer evidence of Middleton's certification. Thus, whether the hearing officer erroneously relied upon the Idaho State Police website to access Sergeant Middleton's breathalyzer certification is irrelevant because Watkins did not meet his burden to show that Sergeant Middleton was not

11

certified. Accordingly, it was presumed that Sergeant Middleton was certified to operate the breathalyzer machine.

Further, Watkins' argument that the hearing officer erroneously relied on the Idaho State Police website to access Sergeant Middleton's breathalyzer certification is not persuasive. The notice of the hearing put Watkins on notice that it was his burden to establish, by a preponderance of the evidence, a ground to vacate his driver's license suspension and provided discovery information for the case. Specifically, the notice directed Watkins to a publically available website where he could obtain relevant officer certifications, stating:

> Officer Certifications, Instrument Certifications, Certificates of Analysis/Approval, Dry Gas Performance Verification Vendors and Distributors with contact information, Breath Alcohol Reference Manuals, and Breath, Blood, and Urine Standard Operating Procedures, can be obtained through the Idaho State Police website: http://www.isp.idaho.gov/forensics/services/breath-alcohol.

As a result of this notice, Watkins could review Sergeant Middleton's certification status and, if appropriate, challenge that status.

At the hearing, the administrative hearing officer informed Watkins that it may take official notice of the Idaho State Police website as utilized for breath alcohol analysis.[3] Also, in its order sustaining Watkins' driver's license suspension, the hearing officer reiterated that he took official notice of the Idaho State Police manuals, the Standard Operating Procedure, and the Idaho State Police website for certification. Despite having notice of this publically available information, Watkins did not challenge Sergeant Middleton's breathalyzer certification at the ALS hearing (although he later did so through a motion to reconsider) and concedes that Sergeant Middleton was certified at the time he administered the breathalyzer test. That the hearing officer took official notice of Sergeant Middleton's certification status has no bearing on whether Watkins met his burden to affirmatively establish Sergeant Middleton was not certified in order to set aside the license suspension. Watkins did not (and cannot) meet this burden and, thus, we cannot say that the hearing officer's decision to take official notice of Sergeant Middleton's certification was erroneous.

---

[3] Although the transcripts of the Administrative License Suspension hearing are not in the record, in its denial of Watkins' motion for reconsideration, the administrative hearing officer found that it informed Watkins that it may take official notice of the Idaho State Police website as utilized for breath alcohol analysis. Watkins did not challenge this finding in the district court or on appeal.

## IV.

### CONCLUSION

Watkins did not establish grounds to vacate his driver's license suspension. First, because Watkins' cargo light on the rear of his vehicle was emitting a rear facing white light, Sergeant Middleton had reasonable suspicion to support the traffic stop of Watkins for violating I.C. § 49-910(3). Second, technical flaws in the probable cause affidavit do not provide grounds to vacate Watkins' driver's license suspension. Finally, Watkins did not meet his burden of proof for challenging Sergeant Middleton's breathalyzer certification during the administrative hearing. Accordingly, the district court did not err in affirming the hearing officer's suspension of Watkins' driver's license.

Judge GRATTON and Judge BRAILSFORD **CONCUR**.